[Crim. No. 5770. Fifth Dist. May 10, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES D. READ, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Harvey R. Zall, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and David DeAlba, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANSON (P. D.), J.**—This is an appeal from a judgment of conviction of involuntary manslaughter and firearm use in violation of Penal Code sections 192, subdivision 2, and 12022.5.

### FACTS[2]

### DISCUSSION

Appellant, who shot and killed the victim with a shotgun in a confrontation outside a bar, was charged with murder and convicted of involuntary manslaughter. The jury was instructed that involuntary manslaughter is an unlawful killing without malice which occurs "in the commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm, without due caution and circumspection" or "during the commission of a misdemeanor which is inherently dangerous to human life, namely the offense of threatening with a weapon, Penal Code section 417." (See CALJIC No. 8.45.) The court also instructed that an unlawful killing may be involuntary manslaughter if because of diminished capacity there is no intent to kill. CALJIC No. 8.48.)

### I[4]

### II

Appellant contends that he should not suffer an additional penalty for firearm use under Penal Code section 12022.5[6] because he was convicted of involuntary manslaughter and "one theory invoked to convict appellant . . . was explicitly based on his having threatened the victim with a firearm." We affirm imposition of the enhancement because firearm use is not an element of the offense of involuntary manslaughter and the Legislature clearly intended to im-

---

[2]See footnote 1, *ante.*

[4]See footnote 1, *ante.*

[6]All statutory references are to the Penal Code.

pose more severe penalties for homicides committed with the use of a *firearm.* (*People* v. *Quesada* (1980) 113 Cal.App.3d 533, 540 [169 Cal.Rptr. 881].)

At the time of this offense, section 12022.5 provided: "Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of two years, unless use of a firearm is an element of the offense of which he was convicted.

"The additional term provided by this section may be imposed in cases of assault with a deadly weapon under Section 245."[7]

Section 12022.5 specifically mentions that the enhancement may be imposed in an assault with a deadly weapon conviction. Appellant assumes the Legislature intended this clause to be an *exception* to allow the increased punishment although gun use is an element of the offense of assault with a deadly weapon.

Appellant's argument confuses the facts of a particular offense with the legal elements of the crime. It also totally ignores the lengthy evolution of the statute to deter use of firearms (as distinguished from weapons generally) because of the greater dangers their use poses to human life. (See *People* v. *Aguilar* (1973) 32 Cal.App.3d 478, 486 [108 Cal.Rptr. 179].)

■ The phrase "element of the offense" has a settled meaning in California law which the Legislature is presumed to know, i.e., an essential component of the legal definition of the crime considered in the abstract. (Pen. Code, § 7, subd. 16; see *People* v. *Barrick* (1982) 33 Cal.3d 115, 133 [187 Cal.Rptr. 716, 654 P.2d 1243].) "Provisions of the Penal Code must be construed ' " 'according to the fair import of their terms, with a view to effect its objects and to promote justice.' " [Citation.] Consistent with that general principle, appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction.' (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46].) If ambiguity is found, the statute is to be interpreted 'in the light of the objective sought to be achieved by it, as well as the evil sought to be averted.' [Citation.]" (*In re Andrews* (1976) 18 Cal.3d 208, 212 [133 Cal.Rptr. 365, 555 P.2d 97].)

---

[7]Section 12022.5, as well as sections 245, subdivision (a), and 417 were amended in 1982. Unless otherwise stated, our discussion refers to the language of these statutes as they read at the time of this offense.

The legislative and decisional history of section 12022.5 as well as its present wording indicates a legislative intent to provide a special and greater penalty for use of *firearms* in the commission of felonies. Section 12022.5 was originally enacted in 1969 to overcome, in cases in which a firearm was used, the problem of unauthorized increased punishment under former section 12022 where being armed with a deadly weapon was an essential element of the underlying offense (*People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], first degree robbery; *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417], assault with a deadly weapon).

"The application of statutes providing additional penalty for a defendant convicted of committing a crime under aggravated circumstances has long been a question of statutory interpretation. (See *People* v. *Floyd, supra,* 71 Cal.2d 879; *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417].) Prior to the enactment of section 12022.5 the law provided increased penalties for defendants who were 'armed' during the commission of felonies. This was accomplished by legislative provisions establishing higher degrees of crimes such as robbery or burglary committed while armed with a deadly weapon, by creating new crimes where deadly weapons were involved (i.e., assault with a deadly weapon), and by increasing the penalty for all felonies where the defendant was armed with a deadly weapon (§ 12022). By statutory interpretation, however, we were unable to discern a legislative intent that an increased penalty be imposed upon those who were armed with a deadly weapon during the commission of a crime where being armed was a necessary element to a finding of the crime or of its degree. (*People* v. *Floyd, supra,* 71 Cal.2d 879; *In re Shull, supra,* 23 Cal.2d 745.)

"In 1969 the Legislature, obviously to impose a greater deterrent upon those who resort to the use of a firearm in the commission of specified crimes, including robbery, and to overcome in part the problem upon which *Floyd* focused, enacted section 12022.5 to be applied 'even in those cases where the use of a weapon is an element of the offense.' (§ 12022.5.) The rationale of our decision in *Floyd* is that in those cases where a specific statute (§ 213) already provides an increased punishment for being armed with a deadly weapon in the commission of the crime, it was ' "not to be supposed that for the same offense without any additional factor existing the added punishment [provided in section 12022] should be imposed." ' (*People* v. *Floyd, supra,* at p. 883.) By its enactment of section 12022.5 the Legislature provided an additional punishment for a wrong-doer who 'uses a firearm' in the commission or attempted commission of certain felonies and it left no doubt as to the applicability of such punishment even in those cases where 'the use of a weapon' is also an element of the offense." (*People* v. *Chambers* (1972) 7 Cal.3d 666, 671-672 [102 Cal.Rptr. 776, 498 P.2d 1024].)

As originally enacted, section 12022.5 listed six felonies, including assault with a deadly weapon and robbery, for which additional punishment could be imposed for gun use and further recited, "This section shall apply even in those cases where the use of a *weapon* is an element of the offense." (Stats. 1969, ch. 954; italics added.) In 1975, the statute was amended to add assault with intent to commit murder to the list of felonies, obviously in response to *People* v. *Provencher* (1973) 33 Cal.App.3d 546, 548-549 [108 Cal.Rptr. 792], which held the original statute inapplicable to that crime. (Stats. 1975, ch. 278; see also *People* v. *Strickland* (1974) 11 Cal.3d 946, 959-960 [114 Cal.Rptr. 632, 523 P.2d 672].)

The change in section 12022.5 to make the gun-use enhancement applicable to all felonies *unless* gun use is an element, and to specify that such enhancement may be applied to assault with a deadly weapon, was enacted as part of the determinate sentencing law, which simultaneously abolished the special crime of first degree robbery, subject of *People* v. *Floyd, supra,* 71 Cal.2d 879. (Stats. 1976, ch. 1139; Stats. 1977, ch. 165.)

This amendment shows a legislative intent to broaden the application of the statute to all felonies in which gun use is not an element. Nothing in the language indicates an intention to alter the distinction between weapon and gun use; rather, the mention of assault with a deadly weapon reflects a continuing intention to distinguish between the use of deadly weapons generally and use of firearms and to provide uniformly greater punishment for the latter commensurate with the greater danger to society.

It is clear under the case law that *firearm* use is not considered an element of the crime of assault with a deadly weapon. At the time of this offense, the statute defining assault with a deadly weapon provided in pertinent part: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison for two, three, or four years, . . ." (Former Pen. Code, § 245, subd. (a).)

"A myriad of instruments, other than firearms, fit into the category of deadly weapon, and may fulfill the third element of [assault with a deadly weapon] . . . ." (*People* v. *Whitehouse* (1980) 112 Cal.App.3d 479, 484-485 [169 Cal.Rptr. 199].) This accords with the legislative and case law background discussed above and is consistent with an interpretation that the specific mention of assault with a deadly weapon in section 12022.5 is not intended as an *exception,* but rather is illustrative of the principle that this enhancement is to be applied even where *weapon* use is an element of the offense.

■ The courts have uniformly held that the distinction drawn between deadly weapons generally and firearms is reasonable and therefore have upheld the additional penalty. (*In re Culbreth* (1976) 17 Cal.3d 330, 333, [130 Cal. Rptr. 719, 551 P.2d 23]; *People* v. *Morgan* (1973) 36 Cal.App.3d 444, 449 [111 Cal.Rptr. 548]; *People* v. *Aguilar, supra,* 32 Cal.App.3d 478, 486; *People* v. *Henry* (1970) 14 Cal.App.3d 89, 92-93 [91 Cal.Rptr. 841].) No problem of double punishment is raised because section 12022.5 does not define an offense, but merely provides for additional punishment for offenses in which a firearm is used; the question is whether the Legislature intended the enhanced penalty to apply under the circumstances of this case. (*People* v. *Hunt* (1977) 19 Cal.3d 888, 891, fn. 2 [140 Cal.Rptr. 651, 568 P.2d 376]; *In re Culbreth, supra,* 17 Cal.3d 330, 333.)

Viewing the language of section 12022.5 in light of this history, it is apparent that the enhancement was intended to apply to the offense of involuntary manslaughter as well as to voluntary manslaughter or murder. *Firearm* use is not an element of the felony of involuntary manslaughter; just as murder, this crime can be committed in a variety of ways without using a firearm. (*People* v. *Quesada, supra,* 113 Cal.App.3d 533, 540; *People* v. *Aguilar, supra,* 32 Cal.App.3d at p. 486.)

Furthermore, we disagree with appellant's assumption that if appellant had been prosecuted solely on a misdemeanor-manslaughter theory, with former section 417 as the underlying misdemeanor, firearm use would be an essential element of the offense. Former section 417, subdivision (a), as read to the jury at trial, provided: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, *or any other deadly weapon whatsoever,* in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor." (Italics added.) Even applying appellant's analysis, it is evident that use of a firearm is not an essential element of involuntary manslaughter based on the inherently dangerous misdemeanor of brandishing a *weapon.*

The policy reasons favoring application of the statute to murder or assault with a deadly weapon where a firearm is used are equally applicable to involuntary manslaughter. The purpose of section 12022.5 is to discourage the use of firearms, and more fundamentally, to prevent people from being killed. (*In re Culbreth, supra,* 17 Cal.3d 330, 333; *People* v. *Aguilar, supra,* 32 Cal.App.3d 478, 486.)

Had appellant not brandished a *firearm,* the victim in this case might be alive. Imposition of an additional penalty for use of a firearm is consistent with the language and purpose of the statute, and is eminently reasonable.

III[8]

IV

The judgment is affirmed.

Hamlin, J., concurred.

**ZENOVICH, Acting P. J.**—I concur in affirming the judgment of conviction but respectfully dissent from that portion of the opinion dealing with the gun-use enhancement. While I recognize the Legislature's admirable goal in seeking to deter the use of firearms by imposing greater penalties for the use of firearms in the commission of felonies, I do not think that appellant's sentence was properly enhanced in the instant case.

First, pursuant to Penal Code section 12022.5, additional punishment may not be imposed if "use of a firearm is an element of the offense of which he was convicted." I would hold the use of a firearm *is* an element of the offense of misdemeanor manslaughter, with the underlying misdemeanor being brandishing a *firearm* within the meaning of Penal Code section 417. The majority holds that firearm use is not an element of the instant offense because Penal Code section 417 includes both "firearm" and "weapon" in its proscriptions. The majority quickly concludes that "it is evident that use of a firearm is not an essential element of involuntary manslaughter based on the inherently dangerous misdemeanor of brandishing a *weapon.*" However, as stated above, former Penal Code section 417 proscribes brandishing a *"firearm . . . or any other deadly weapon."* (Italics added.) Just because section 417 mentions other weapons as well as firearms does not mean that firearm use would not be an element of a Penal Code section 417 violation. I would therefore hold that firearm use is an element of Penal Code section 417 and consequently an element of misdemeanor manslaughter, with the underlying misdemeanor being brandishing a firearm in violation of Penal Code section 417.

Second, the majority relies on *People* v. *Quesada* (1980) 113 Cal.App.3d 533 [169 Cal.Rptr. 881], which resolved the instant issue without analysis. I find no cases citing *Quesada* and do not feel compelled to follow it.

Third, *at the very least,* the question of whether the Legislature has expressed an intent to apply the firearm enhancement penalty to the instant situation is "close and subtle." (*People* v. *Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 696, 602 P.2d 396].) Under well-settled principles of statutory construction, appellant is entitled to the benefit of any doubt. "It is the policy of

---

[8]See footnote 1, *ante.*

this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

Accordingly, I would hold that the judgment should be modified to strike appellant's gun-use enhancement. I would affirm in all other respects.