[No. C042341. Third Dist. Sept. 2, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW PASQUALE CHAFFER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II and III of the Discussion.

**COUNSEL**

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stephen G. Herndon and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—A jury convicted defendant Andrew Pasquale Chaffer of two counts of inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)),[1] and found true allegations defendant inflicted great bodily injury (GBI) within the meaning of section 12022.7, subdivision (a) in both counts. The trial court sentenced defendant to a total of eight years in state prison: the upper term of four years in count one, a consecutive term of one year (one-third the midterm) in count two, and a consecutive term of three years for the GBI enhancement in count one. The trial court struck the GBI enhancement on count two.

On appeal, defendant argues he is entitled to reversal because the court erred in admitting evidence of a prior incident of domestic violence, instructing the jury with a modified version of CALJIC No. 2.50.02, and failing to instruct with CALJIC No. 2.71. He also contends the trial court erred in imposing the GBI enhancement on count one. In the published portion of the opinion, we conclude the trial court properly imposed the GBI enhancement. In the unpublished portion of the opinion, we reject defendant's other contentions of prejudicial error.

We shall therefore affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Jennifer M. was living with defendant in March 2002. He was the father of two of her children, and she was pregnant with a third. Jennifer testified at trial in July 2002 that she and defendant were engaged.

Jennifer telephoned the Lassen County Sheriff's Department the afternoon of March 21, 2002, because she was "overwhelmed." Deputy Mario Manzo was dispatched to her residence in Janesville. He immediately observed that Jennifer's left eye was black, there was a laceration above the eye, she had a brace on her leg, and was sitting in a wheelchair. When Manzo questioned Jennifer about her injuries, she was evasive and simply stated that she wanted to leave the house.

Deputy Manzo spoke with Jennifer's two older children and their observations were inconsistent with what their mother had told him. During further questioning, Jennifer revealed that defendant had punched her in the eye three days before. Jennifer also described an incident in November 2001, when she started to call the police during an argument with defendant. She broke her leg when defendant grabbed her from behind, wrapped his legs around her, and caused her to fall. Jennifer also told Deputy Manzo that defendant had been yelling at her a lot recently and battering her on a daily basis. She said that defendant had threatened to kill her if she ever called the police. Lassen Family Services moved Jennifer and her children out of the house that night.

Manzo talked with defendant at the time of his arrest. With regard to the broken leg, defendant first told the deputy that Jennifer fell off the back porch when she went to check on the chickens. Later, he told Manzo that Jennifer had tripped over the computer table in the front room. As to the black eye, defendant said the baby was having a fit during the night and hit Jennifer in the eye.

The November 2001 leg injury formed the basis for count one of the information. The March 2002 eye injury formed the basis for count two of the information.

At trial, Jennifer denied telling Deputy Manzo that defendant caused the injuries to her leg and eye and that he had been beating her. She testified that defendant had come up behind her, stepped on her sock, and caused her to fall and break her leg. She denied she and defendant had been arguing at the time. Jennifer also testified that she never saw what caused the injury to her eye because the lights were off, but she believed the baby threw his head back and hit her.

The prosecution called Michelle S. as a witness over defense objection. Michelle had lived with defendant from 1992 to 1994, and he was the father

of her son. After an argument in August 1994, defendant forced himself inside the house and hit Michelle in the left eye. Michelle suffered a black eye and cut. The police arrested defendant. Michelle testified that she obtained a restraining order, and defendant became violent when it was served on him.

## DISCUSSION

### I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

### *GBI Enhancement*

At the time of these offenses in 2001 and 2002, section 12022.7, subdivision (a) provided: "A person who personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years, *unless infliction of great bodily injury is an element of the offense of which he or she is convicted.*" (Stats. 2000, ch. 919, § 1, italics added.)[4]

The jury in this case found true the allegations defendant personally inflicted great bodily injury on Jennifer within the meaning of section 12022.7, subdivision (a) in counts one and two. Thereafter, the court imposed a three-year enhancement on count one, where defendant broke the victim's leg, and struck the enhancement on count two.

Defendant cites two reasons the court erred in imposing the GBI enhancement on count one. First, he contends the enhancement was improper because great bodily injury is an element of the underlying violation of section 273.5, unlawful infliction of corporal injury on a cohabitant. Second, defendant says the three-year sentence on the enhancement constituted multiple punishment

---

*See footnote, *ante*, page 1037.

[4] The Legislature subsequently amended section 12022.7 in 2002 to read, in part:

"(a) Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years. [¶] ... [¶]

"(g) ... Subdivisions (a), (b), (c) and (d) shall not apply if infliction of great bodily injury is an element of the offense." (Stats. 2002, ch. 126, § 6.)

for a single act, which is prohibited by section 654. As we shall explain, neither contention has merit.

## A.

Section 273.5 reads in relevant part:

"(a) Any person who willfully inflicts upon a person who is his ... cohabitant, ... corporal injury resulting in a traumatic condition, is guilty of a felony .... [¶] ... [¶]

"(c) As used in this section, 'traumatic condition' means a condition of the body, such as a wound or external or internal injury, *whether of a minor or serious nature*, caused by a physical force." (Italics added.)

Cases have construed "great bodily injury" to be the same as "serious bodily injury." (See *People v. Beltran* (2000) 82 Cal.App.4th 693, 696–697 [98 Cal.Rptr.2d 730] (*Beltran*); *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375 [19 Cal.Rptr.2d 434] (*Hawkins*).) Citing this authority, defendant argues the "injury ... of a ... serious nature" language in section 273.5 means the same thing as the term "serious bodily injury." He reasons that because the section 12022.7 GBI enhancement is inapplicable where serious bodily injury is an element of the underlying offense (*Beltran, supra,* 82 Cal.App.4th at pp. 696–697; *Hawkins, supra,* 15 Cal.App.4th at p. 1375), it is inapplicable in this case.

Defendant relies on the analysis employed by this court in *People v. McGee* (1993) 15 Cal.App.4th 107 [19 Cal.Rptr.2d 12] (*McGee*) to support his argument that serious bodily injury is an element of section 273.5. *McGee* involved the violation of section 245, subdivision (a)(1), which identifies two forms of prohibited conduct—(1) assault with a deadly weapon other than a firearm, and (2) assault by means of force likely to produce great bodily injury. (*McGee*, at p. 110.) "At trial, [McGee] initially suggested that, because his sentence could not be enhanced under section 12022, subdivision (b) for an assault with a deadly weapon other than a firearm, the prosecution must make an election, i.e., either [McGee] assaulted the victim with a deadly weapon or assaulted the victim by means of force likely to produce great bodily injury. Thereafter, [McGee] moved to strike the enhancement because use of a deadly weapon is an element of the crime charged against him. [¶] After noting case law appeared to support [McGee's] contention that the enhancement could not be imposed on an assault with a deadly weapon, the prosecutor asked the court to amend the jury instructions, and implicitly to amend the information, to charge [McGee] only with assault by means of force likely to produce great bodily injury, deleting the deadly weapon

portion of the section 245, subdivision (a)(1) charge. The court complied." (*Id.* at pp. 112–113.) Thereafter, the jury found McGee guilty of assault by means of force likely to produce great bodily injury, and found true the allegation he used a deadly weapon in the commission of the offense. The trial court sentenced defendant on both, suspended execution of the sentence, and granted McGee probation. (*Id.* at p. 113.)

On appeal, we struck the weapon use enhancement under section 12022, subdivision (b). We acknowledged that, viewed in the abstract, use of a deadly weapon was not an element of assault under section 245, subdivision (a)(1) because the offense could be committed without using a deadly weapon. (*McGee, supra,* 15 Cal.App.4th 107, 110.) However, we noted that where the offense encompasses two forms of prohibited conduct, "prosecutors could evade the exception to imposition of a deadly weapon use enhancement set forth in section 12022, subdivision (b)—and thereby increase the punishment to be imposed for an assault with a deadly weapon other than a firearm—simply by charging the crime as an assault by means of force likely to produce great bodily injury and alleging a deadly weapon use enhancement. This the prosecution cannot do because section 245, subdivision (a)(1) defines only one offense. 'The offense of assault by means of force likely to produce great bodily injury is not an offense separate from ... the offense of assault with a deadly weapon.' [Citation.] Hence, the conduct of the accused, rather than the prosecution's pleading, determines whether use of a deadly weapon is an element of a section 245, subdivision (a)(1) conviction." (*Ibid.*)

Defendant reasons that great bodily injury is an element of section 273.5 in this case because, like the statute in *McGee*, it provides alternative grounds for charging a violation, one of which involves "serious injury," and defendant's unlawful conduct involved infliction of serious bodily injury, i.e., the victim's broken leg. A careful comparison of the two statutes reveals differences that defeat defendant's argument.

The Legislature provided that under section 245, subdivision (a)(1), either an assault with a deadly weapon or assault by force likely to produce great bodily injury will result in a felony conviction. Based on the facts of the particular case, the prosecution may prove either to convict the accused of a felony, and both are elements of the crime. An element of a crime is " 'an essential component of the legal definition of the crime.' " (*McGee, supra,* 15 Cal.App.4th 107, 114, quoting *People v. Read* (1983) 142 Cal.App.3d 900, 903 [191 Cal.Rptr. 305].)

In this case, the language of section 273.5 that defendant wants to analogize to *McGee* merely qualifies the operative term "traumatic condition." It says injury resulting in a traumatic condition will suffice "whether of

a minor or serious nature." However, unlike the section 245 statute construed in *McGee*, this language does not impose two alternative modes of committing the offense, i.e., one where the traumatic condition is minor and the other where it is serious. We know this because, to read "injury ... of a minor or serious nature" in the alternative, as defendant suggests, would omit from criminal liability *moderate* injuries, an absurd result the Legislature could not have intended. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) By including both minor and serious injuries in its description of "traumatic condition," the Legislature surely intended to encompass moderate injuries as well. ▇ It therefore appears that the language "whether of a minor or serious nature" is simply another way of saying *the injury may be of any variety* or *regardless of the seriousness*. Accordingly, because *serious* injury is not an essential component of the definition of the crime, we conclude that serious bodily injury is not a necessary element of section 273.5, and the section 12022.7 GBI enhancement applies.

### B.

As we recited at the outset of this discussion, section 12022.7, subdivision (a) provided at the time of this offense in pertinent part, "A person who personally inflicts great bodily injury on any person ... in the commission ... of a felony shall ... be punished by an additional term of three years ...."

Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." The purpose of the statute is " 'to insure that the defendant's punishment will be commensurate with his criminal liability.' " (*People v. Hall* (2000) 83 Cal.App.4th 1084, 1088 [100 Cal.Rptr.2d 279].) ▇ Thus, a defendant may not receive multiple sentences where a single criminal act results in violation of more than one criminal statute. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].) Similarly, multiple punishment is barred where the defendant violates multiple criminal statutes as a means of accomplishing one objective, and the defendant harbored a single intent. (*Ibid.*)

Defendant contends that "his single act of causing a serious bodily injury resulted in a violation of both the felony cohabitant abuse statute and the great bodily injury enhancement statute," and punishment for both is prohibited by section 654. ▇ We conclude section 12022.7 is a specific provision that operates as an exception to the more general statute, section

654. Accordingly, the court did not err in sentencing defendant on both the underlying offense and the GBI enhancement.

■ Section 654 is a general statute that applies to all species of criminal conduct. Courts have applied section 654 to multiple enhancements (see *People v. Coronado* (1995) 12 Cal.4th 145 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; *People v. Reeves* (2001) 91 Cal.App.4th 14 [109 Cal.Rptr.2d 728]; *People v. Arndt* (1999) 76 Cal.App.4th 387 [90 Cal.Rptr.2d 415]; and *People v. Moringlane* (1982) 127 Cal.App.3d 811 [179 Cal.Rptr. 726], disapproved on other grounds in *People v. Jones* (1991) 53 Cal.3d 1115 [282 Cal.Rptr. 465, 811 P.2d 757]), but the Supreme Court has not ruled on the issue now before us—whether section 654 bars sentencing on the section 12022.7 GBI enhancement where the same conduct forms the basis of the underlying criminal conviction (*Coronado, supra,* at p. 157; *Arndt, supra,* at p. 395).

■ Section 12022.7 is a narrowly crafted statute intended to apply to a specific category of conduct. It represents "a legislative attempt to punish more severely those crimes that actually result in great bodily injury." (*People v. Guzman* (2000) 77 Cal.App.4th 761, 765 [91 Cal.Rptr.2d 885]; *People v. Parrish* (1985) 170 Cal.App.3d 336, 344 [217 Cal.Rptr. 700].) The Legislature has elected to impose such specific enhancements in part "because of the nature of the offense at the time the offense was committed …." (§ 666.7.)

If we were to apply the general provisions of section 654 to the more specific GBI enhancement, it would nullify section 12022.7, because the enhancement and underlying offense *always* involve the same act. This cannot be what the Legislature intended, because, " 'As a general rule of statutory construction … repeal by implication is disfavored.' " (*People v. Bouzas* (1991) 53 Cal.3d 467, 480 [279 Cal.Rptr. 847, 807 P.2d 1076].)

Where statutes are in conflict, it is well settled that " ' "a general [statutory] provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." ' " (*People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 808 [123 Cal.Rptr.2d 31, 50 P.3d 743] [the more general Code Civ. Proc. § 170.6 was not intended to permit the forum shopping § 1538.5 was specifically enacted to prevent]; see *Barnes v. Superior Court* (2002) 96 Cal.App.4th 631, 641–642 [117 Cal.Rptr.2d 621]; cf. *People v. Chardon* (1999) 77 Cal.App.4th 205, 214 [91 Cal.Rptr.2d 438] [overlap between statutes not significant

enough to support the conclusion that the Legislature intended one to preclude prosecutions under the other].)

We therefore presume that the specific statute controls and operates as an implied exception to section 654. (*People v. Superior Court (Jimenez), supra,* 28 Cal.4th 798, 808.) The trial court properly imposed the GBI enhancement in this case.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Robie, J., concurred.

A petition for a rehearing was denied September 24, 2003, and appellant's petition for review by the Supreme Court was denied November 25, 2003. Brown, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.