Filed 6/11/25  P. v. Jones CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082855 |
| v. | (Super.Ct.No. RIF100567) |
| EARNEST LEE JONES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Crystal A. Morgan, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Liz Sulaiman, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Earnest Lee Jones guilty of attempted voluntary manslaughter (Pen. Code,[1] §§ 664, 192, subd. (a), count 1), assault with a semiautomatic firearm upon four different individuals (§ 245, subd. (b), counts 2, 4, 6 & 7), attempted murder (§§ 664, 187, count 3), and discharging a firearm at an occupied vehicle (§ 246, count 5). The jury also found true firearm and great bodily injury (GBI) allegations as to the various counts (§§ 12022.53, subd. (d), 12022.5, subd. (a)(1) & 12022.7, subd. (a).) The trial court sentenced defendant to an indeterminate term of 32 years to life, plus a determinate prison term of 17 years. The case was remanded on four occasions for resentencing, following four prior appeals.[2] This fifth appeal arises from a resentencing hearing that was conducted after this court remanded for a full resentencing. (*People v. Jones, supra*, E077323.) Defendant now contends the trial court abused its discretion when it sentenced him by: (1) failing to consider his mitigating factors when resentencing him to consecutive versus concurrent terms; and (2) failing to consider Senate Bill No. 81 and Assembly Bill 518 in resentencing him. We affirm.

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

[2] Defendant filed a request for this court to take judicial notice of our opinions in case Nos. E034706, E041222, E073637, and E077323. (See *People v. Jones* (Dec. 17, 2004, E034706) [nonpub.opn.]; *People v. Jones* (Feb. 27, 2009, E041222) [nonpub. opn.]; *People v. Jones* (Dec. 11, 2020, E073637) [nonpub.opn.]; and *People v. Jones* (Jan. 27, 2022, E077323 [nonpub.opn.].) By order filed on November 8, 2024, we denied the request since the opinions are already part of the record in the clerk's transcript at pages 76-94. However, we granted the request to take judicial notice of the records from those prior appeals.

FACTUAL BACKGROUND[3]

Ashley Boggs was driving her car, and Matthew Lopes (her boyfriend), Leander Tillman, and Lopes's two-year-old nephew, J.C., were with her. Boggs was driving Lopes and Tillman to find defendant and 14-year-old F.C. Boggs wanted F.C. to apologize for choking her earlier that month. When Boggs found them, she stopped the car, and Lopes and Tillman got out. Tillman spoke with defendant, while Lopes confronted F.C., Lopes grabbed F.C.'s shirt and shook him. Defendant tried to intervene, but Tillman told him to calm down and let Lopes and F.C. handle their dispute. After Lopes let F.C. go, F.C. started walking off. Lopes then saw defendant reach for his pocket. Believing defendant had a gun, Lopes told Boggs to open the trunk so he could find his baseball bat. While Lopes was looking in the trunk, Erica Aieulo grabbed Boggs by the hair and tried to pull her out of the car. Lopes grabbed Aieulo's throat and told her to let go of Boggs. Defendant then fired a shot at Lopes's head. Lopes released Aieulo and ran around Boggs's car. Defendant followed him and fired more shots. One bullet hit the trunk of Boggs's car and another struck Tillman, who was standing nearby. Lopes got in the car, and Boggs drove away. Defendant continued to shoot at Lopes and the car.

---

[3] This factual background is taken directly from our opinion in *People v. Jones*, *supra*, E041222.

After defendant's fourth appeal, this court vacated his sentence once again and remanded the matter for a full resentencing. Before the resentencing hearing, defense counsel filed a brief requesting the court exercise its discretion pursuant to *People v. Buycks* (2018) 5 Cal.5th 857 and the remittitur issued by this court to consider various changes in sentencing laws under Senate Bill No. 81 (Senate Bill 81), Senate Bill No. 567 (Senate Bill 567), Assembly Bill 124, Assembly Bill 518, and Senate Bill No. 620 (Senate Bill 620). He also argued the trial court should resentence him pursuant to section 1172.6.

Specifically, defense counsel argued that the court should dismiss defendant's firearm enhancements in the furtherance of justice because this case was connected to childhood trauma, the imposition of an enhancement would result in a sentence longer than 20 years, and defendant was only 18 years old at the time of the incident. Defense counsel averred that defendant grew up "watching and experiencing violence, so much so that his natural reaction was to respond with violences [*sic*]." Further, she pointed out that the court may impose a lesser uncharged enhancement under *People v. Tirado* (2022) 12 Cal.5th 688. Defense counsel also asserted there were no circumstances in aggravation. Further, she requested the court to consider defendant's rehabilitation

---

[4] The procedural history from the first three appeals is recited in our last opinion, *People v. Jones, supra*, E077323. We see no need to repeat that procedural history for purposes of the current appeal.

efforts, stating that defendant had many certificates of programs and classes he had successfully completed, and his discipline record was nearly impeccable.

The prosecutor filed a brief opposing the dismissal of the firearm enhancements on the ground it would endanger public safety, given how violent defendant was in the commission of his offenses. The prosecutor analogized his case with *People v. Mendoza* (2023) 88 Cal App.5th 287 (*Mendoza*), to illustrate how violent the offenses were.

The trial court held a resentencing hearing on December 13, 2023. At the outset, the court noted that defendant was not entitled to relief under section 1172.6, since he had no current sentence. However, once it dealt with the resentencing, then defendant could make a motion pursuant to section 1172.6, "provided that he is sentenced on at least one count of attempt[ed] murder or attempt[ed] voluntary manslaughter arising from the original charges of attempted murder." Defense counsel agreed.

Defense counsel then argued that under section 1385, the court had the discretion to dismiss several enhancements so the ultimate sentence would account for four victims. Defense counsel argued that defendant was not a danger to society and attempted to distinguish him from the defendant in *Mendoza*. She pointed out that Mendoza was a home invader who deliberately entered another person's home, whereas defendant was walking down the street when the victims approached him and initiated the altercation.

The prosecution emphasized that dismissal of enhancements under section 1385 would endanger public safety, especially considering defendant shot at a car with a

toddler inside. However, the prosecutor agreed that the low term on all counts was appropriate in this case, and otherwise submitted on his briefing.

The trial court discussed the sentencing ranges for each conviction and the different discretions it had, including the discretion to strike the punishment on the firearms enhancements and, pursuant to *Tirado*, to impose a lesser punishment. Regarding section 1170, the court recognized there were no aggravating factors proven beyond a reasonable doubt, so the midterm sentence was the default. The court also stated it read defendant's factors in mitigation.

The court also discussed the application of section 654 and asked defense counsel if there was any other discretion that applied to this case. Defense counsel mentioned the court should consider defendant's childhood trauma and mental health considerations under section 1385. The court then proceeded to sentence defendant. Beginning with count 3 (attempted murder of Lopes), the court stated there was a mandatory seven years to life sentence because the allegation that it was willful, deliberate, and premeditated was found true. The court imposed a consecutive 25 years to life term on the attendant gun use enhancement. In doing so, the court acknowledged its discretion under section 1385 to dismiss the enhancement or to impose a lesser enhancement under *Tirado*. The court found that it would not be in the interest of justice to dismiss it, but rather, it would be a danger to society. The court found that defendant was "absolutely a danger to society" and stated, "[t]he fact pattern in *Mendoza* is far less terrifying than the fact pattern here," since Mendoza threatened his victims with a gun but only discharged it at a

6

blank wall, while defendant discharged his gun directly at multiple people. The court added, "People who actually use firearms in the way that the defendant used them here are absolutely and without exception a danger to public safety." The court added that it was choosing to impose 25 years to life term considering there were multiple victims, and defendant chose to "continue the assault when they were clearly fleeing from him."

On count 5, the court imposed the low term of three years, based on defendant's youth, plus a consecutive 25 years to life for the firearm use enhancement, and it ordered the entire sentence on count 5 to run concurrent to the sentence in count 3. Thus, the court stated the total indeterminate term was 32 years to life.

The court then turned to the determinate term. It made count 2 the principal count and imposed the low term of three years, plus a consecutive low term of three years on the firearm use enhancement and three years on the GBI enhancement.

On count 1, the court imposed the low term of 18 months and a consecutive three years on the section 12022.7, subdivision (a) GBI enhancement, but it stayed the entire sentence under section 654.

On count 4, the court imposed the low term of three years and the low term of three years on the firearm enhancement section 12022.5, subdivision (a), but stayed the entire term under section 654.

On count 6, the court imposed two years (one-third the midterm) and elected to strike the attendant gun use enhancement under section 1385 because of defendant's youth and upbringing. The court ordered count 6 to run consecutive to count 2.

On count 7, the court imposed two years (one-third the midterm), struck the attendant gun use enhancement under section 1385, and ran count 7 consecutive to count 2.

Ultimately, the court imposed a total indeterminate term of 32 years to life and a determinate term of 13 years.

## DISCUSSION

I. The Court Properly Considered Mitigating Factors in Sentencing Defendant to Consecutive Terms

Defendant argues the court abused its discretion in failing to consider mitigation factors when it resentenced him to consecutive versus concurrent terms. We see no abuse of discretion.

A. *Relevant Law*

The trial court has "broad discretion … in choosing whether to impose concurrent or consecutive terms." (*People v. Monge* (1997) 16 Cal.4th 826, 850–851.) California Rules of Court, rule 4.425 (Rule 4.425) sets forth specific criteria affecting the decision, including, the presence of any circumstances in aggravation or mitigation. "Only one criterion or factor in aggravation is necessary to support a consecutive sentence." (*People v. Davis* (1995) 10 Cal.4th 463, 552 (*Davis*).)

B.  *Defendant Has Waived His Claim That the Court Erred in Failing to State its Reasons for Imposing Consecutive Sentences*

We note that defendant contends the trial court erred in imposing consecutive sentences and states that "it is unknown what facts were relied upon" in doing so.  To the extent he is contending the court failed to state its reasons for imposing consecutive sentences, he has waived this claim by failing to raise it in the trial court.  (*People v. Morales* (2008) 168 Cal.App.4th 1075, 1084.)  The Supreme Court has ruled that "the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices," including its failure to state reasons for those choices.  (*People v. Scott* (1994) 9 Cal.4th 331,353 (*Scott*).)  Consequently, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal."  (*Id*. at p. 356.)

Notwithstanding the waiver, we conclude the court did not abuse its discretion in resentencing defendant to consecutive sentences.

C.  *There Was No Abuse of Discretion*

Defendant contends that none of the factors listed in Rule 4.425 apply.  However, he proceeds to list the factors in mitigation he presented in his brief filed in support of resentencing and claims the court did not weigh these factors when considering whether

9

he should be sentenced consecutively or concurrently.[5]  Defendant further contends the court did not consider his postconviction record of discipline and programming.

Rule 4.425, subdivision (a) provides that "[f]acts relating to the crimes, including whether or not:  (1) The crimes and their objectives were predominantly independent of each other; (2) The crimes involved separate acts of violence or threats of violence; or (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."  Subdivision (b) provides that "[a]*ny* circumstances in aggravation or mitigation … may be considered in deciding whether to impose consecutive rather than concurrent sentences, except:  (1) A fact used to impose the upper term; (2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170(h); and (3) A fact that is an element of the crime."  (Italics added.)

Here, the court specifically stated that it had the discretion to impose consecutive terms because there were multiple victims.  The presence of multiple victims is a proper consideration in imposing consecutive terms.  (*People v. Valenzuela* (1995) 40 Cal.App.4th 358, 362-365; *People v. Leon* (2010) 181 Cal.App.4th 452, 467-468.)  This

---

**5** Defendant's list of mitigation factors include:  he did not graduate from high school, he suffered abuse as a child, he moved a lot and lived with various family members, he lived in low-income neighborhoods with violence and gangs, his uncles and stepfathers were involved with gangs, and his mother went to prison for drug abuse.

single aggravating factor was sufficient to support sentencing defendant consecutively. (*Davis*, *supra*, 10 Cal.4th at p. 552.)[6]

Defense counsel brought defendant's childhood trauma and mental health considerations to the court's attention at the resentencing hearing. The court stated it was "mindful of [defendant's] youth." However, it pointed out that defendant discharged his firearm at multiple people, and he fired six shots. The court further noted that defendant was the person who "escalated the use of deadly force" and found that he was "absolutely a danger to society." Although the court made these comments in the context of declining to strike the section 12022.53, subdivision (d), gun enhancement, the court also considered these factors in imposing the enhancement consecutive to the term served in count 3. It specifically stated that "given the multiplicity of victims and [defendant's] effort to continue the assault when they were clearly fleeing from him suggests that the old punishment pursuant to 12022.53(d) is appropriate. And so for that reason while I am mindful of all of the different discretions that I have, I am imposing 25 years to life to run *consecutive* to the term served in Count 3." (Emphasis added.)

Furthermore, the court acknowledged there were no factors in aggravation proven. It also expressly stated that it "did read the factors in mitigation." Notably, "[i]n deciding

---

[6] We note the probation report listed the following factors in aggravation for the court to consider: "The crime involved great violence, great bodily harm, a threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court, rule 4.421 (rule 4.421), subd. (a)(1)) and "The defendant has engaged in violent conduct, which indicates a serious danger to society." (Rule 4.421, subd. (b)(1).)

11

whether to impose consecutive terms, the trial court may consider aggravating and mitigating factors, but there is no requirement that, in order to justify the imposition of consecutive terms, the court find that an aggravating circumstance exists." (*People v. Black* (2007) 41 Cal.4th 799, 822, superseded by statute on other grounds, as stated in *People v. Lynch* (2024) 16 Cal.5th 730, 757-761. Additionally, contrary to defendant's claim that the court did not consider his postconviction record, defense counsel brought defendant's rehabilitation efforts to the court's attention.[7] Finally, we note defendant's claim in his reply brief that his sentence does not "promote uniformity" since it is not clear why the court sentenced him to the low term but also ran the sentences consecutively. However, defendant has not cited any authority that the sentence had to be *uniform* and has not shown that the court abused its discretion in this respect.[8]

In view of the record, we cannot say the court abused its discretion in sentencing defendant to consecutive sentences.

---

[7] Defense counsel argued that defendant had an impeccable record of discipline with no write-ups since 2017, that he was "doing a lot of very good programming" and receiving certificates of completion, and that he was very engaged in support groups.

[8] We are aware of no case or statute that provides that a court must choose concurrent sentencing when it selects the low term on any given count. Rather, the court must exercise its discretion in selecting the appropriate term and determining whether to run a sentence concurrent or consecutive with other charges or enhancements as discussed *ante*.

II.  The Court Properly Exercised its Discretion in Sentencing Defendant With Regard to

Sections 654 and 1385

Defendant claims that the court "did not fully explain why it was choosing to resentence [him] to all low terms, and yet not use the full discretion it possessed" under Assembly Bill 518 and Senate Bill 81.[9]  We see no abuse of discretion.

A.  *There Was No Abuse of Discretion With Regard to Section 654*

Specifically, defendant asserts that Assembly Bill 518 "forbids more than one punishment for one act" and claims that he received "extra punishment that resulted from count 5."  He argues that in count 5, he was punished for shooting at an occupied vehicle; however, he "has already been punished for doing the same actions for each victim, as the incident in question was not separate transactions with separate intentions."  Defendant further contends the court did not discuss the application of Assembly Bill 518.

At the outset, we note that Assembly Bill 518 amended section 654.  "Previously, where Penal Code section 654 applied, the sentencing court was required to impose the sentence that 'provides for the longest potential term of imprisonment' and stay execution of the other term.  [Citation.] As amended by Assembly Bill 518, Penal Code section 654 now provides the trial court with discretion to impose and execute the sentence of either

---

[9]  We note that defendant initially asserts the court "did not indicate if it fully considered the arguments raised within [his] resentencing brief" with regard to Senate Bill 620.  However, he does not make any specific argument regarding the applicability of Senate Bill 620 to his case.  Since he provides no argument or case authority, we will consider any such claim as waived.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

13

term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379 (*Mani*).)  To the extent defendant is arguing that Assembly Bill 518 applied here, it is unclear how that bill would affect his claim that the court erred by imposing a separate punishment on count 5 under section 654.

In any event, "[s]ection 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591; § 654.)  Defendant appears to be claiming that count 5, shooting at an occupied vehicle, involved the same course of conduct as his convictions for assault with a deadly weapon against the same victims in counts 4 (Lopes), 6 (J.C.), and 7 (Boggs); thus, the court punished him multiple times for the same act.[10]

"[T]here is a 'multiple victim' exception to section 654.  Under this exception, 'even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim.'" (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1781 (*Garcia*).)  "The preclusion of section 654's application does not depend upon a determination that the victims of one violent crime are entirely different from the victims of a second violent crime committed in the same course of conduct.  As long as each violent crime involves at least one different victim, section 654's prohibition against

---

[10]  We note that the fourth victim, Tillman, was not in the car when defendant shot at it.  (*People v. Jones*, *supra*, E041222)

14

multiple punishment is not applicable." (*People v. Masters* (1987) 195 Cal.App.3d 1124, 1128 (*Masters*).

The *Garcia* court explained *People v. Masters*, *supra*, as follows: "[I]n *People v. Masters* (1987) 195 Cal. App. 3d 1124, the defendant had a grudge against a gang to which one Bobby Hooker belonged. When the defendant spotted Hooker driving a car, with Kimberly McLean and Derrick Ross as passengers, he fired four or five shots at Hooker's car; one shot struck Ross. [Citation.] The defendant pleaded guilty to assault on Ross with a deadly weapon and shooting at an occupied motor vehicle [Citation], and was given a separate, unstayed sentence for each." (*Garcia*, *supra*, 32 Cal.App.4th at p. 1782.)

The appellate court upheld the sentencing, applying the multiple victim exception to section 654. "Masters's violation of section 245, subdivision (a)(2), and section 246, while in the same course of conduct, resulted in the commission of violent crimes against different victims. Manifestly, Derrick Ross was the unfortunate victim of Masters' assault with a deadly weapon and all three occupants of the Mustang were victims of his discharge of the firearm at the vehicle." (*Masters*, *supra*, 195 Cal.App.3d at p. 1128.)

In other words, when "different victims are involved a defendant may be punished for both assault with a deadly weapon (§ 245, subd. (a)(2)) and discharging a firearm from a motor vehicle (§ 12034, subd. (c))." (*In re Sergio R.* (1991) 228 Cal.App.3d 588, 598.) Further, "[s]ection 246 does *not* necessarily contemplate multiple victims. A building, motor vehicle, or aircraft can be 'occupied' by a single person. Thus, the

15

multiple victim exception may apply, and multiple punishment may be imposed on a defendant who shoots at a motor vehicle occupied by multiple persons." (*Garcia*, *supra*, 32 Cal.App.4th at p. 1783.)

Here, when defendant fired shots at the vehicle, which was the basis of count 5, the vehicle was occupied by Boggs, Lopes, and J.C. (*People v. Jones, supra*, E077323.) The assault with a deadly weapon conviction in counts 6 and 7 concerning J.C. and Boggs appear to have been based on defendant shooting at the vehicle while they were in it. However, the assault with a deadly weapon conviction in count 4 concerning Lopes appears to have been based on defendant following Lopes outside of the car and firing shots at him. (*Ibid*.) Thus, Lopes could be considered the victim in count 5 (shooting at an occupied vehicle). (*Garcia*, *supra*, 32 Cal.App.4th at p. 1783 [a motor vehicle can be "occupied" by a single person].) In other words, with regard to defendant's conduct of shooting at the occupied vehicle, Boggs and J.C. were the victims of assault with a deadly weapon, and Lopes was the victim of his discharge of the firearm at the vehicle. (See *Masters*, *supra*, 195 Cal.App.3d at p. 1128.) Since a violation of shooting at an occupied vehicle conviction only requires one victim, the court properly imposed punishment on count 5. (See *Garcia*, *supra*, 32 Cal.App.4th at p. 1783.)

Defendant additionally argues that punishing him on his three gun enhancements and one GBI enhancement also constitutes "punishing [him] under different provisions of the law." To the extent he is arguing that section 654 bars punishment for the section 12022.5, subdivision (a) gun enhancement and section 12022.7, subdivision (a) GBI

16

enhancement on the assault with a deadly weapon counts, we disagree.  "Penal Code section 654 generally does not apply to enhancements because they do not define a crime or offense but relate only to the penalty imposed under certain circumstances."  (*People v. Parrish* (1985) 170 Cal.App.3d 336, 344 (*Parrish*).)  "[S]ection 12022.5 does not define an offense, but merely provides for additional punishment for offenses in which a firearm is used."  (*People v. Read* (1983) 142 Cal.App.3d 900, 906 (*Read*).)  Thus, there is no problem with double punishment under section 654.  (*Ibid*.)  Similarly, "Penal Code section 12022.7 is not a substantive offense by itself.  Rather, it is a legislative attempt to punish more severely those crimes which actually result in great bodily injury."  (*Parrish*, *supra*, 170 Cal.App.3d at p. 344.)  Thus, punishment under section 245, subdivision (b), with an enhancement under section 12022.7 is not double punishment for the same offense in violation of section 654.  (*Ibid*.)

B.  *The Court Properly Exercised its Discretion When it Declined to Dismiss Defendant's Sentencing Enhancements Under Section 1385*

Defendant also argues the court failed to consider his mitigating factors and erred in declining to dismiss his enhancements, pursuant to Senate Bill 81 and section 1385.  We disagree.

1.  *Relevant Law*

"Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 to include subdivision (c). (Stats. 2021, ch. 721.)  Section 1385(c)(1) provides that '[n]otwithstanding any other law, the court shall dismiss an enhancement if

it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.' [Citations.] Section 1385(c)(2) provides as follows: 'In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. "Endanger public safety" means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.'" (*Mendoza*, *supra*, 88 Cal.App.5th at p. 295.)  The mitigating circumstances defendant claims here are that application of the enhancements would have a racial impact (§ 1385, subd. (c)(2)(A)), there were multiple enhancements (§ 1385, subd. (c)(2)(B)), application of the enhancements would result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)), and the current offense was connected to childhood trauma (§ 1385, subds. (c)(2)(E)).

"In general, we review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385, subdivision (a)." (*Mendoza, supra*, 88 Cal.App.5th at p. 298.)  Similarly, abuse of discretion is the proper standard of review for the trial court's determination that dismissal of an enhancement would endanger public safety.  (*Ibid.*)

2. *The Court Found That Dismissal of the Enhancements Would Endanger Public Safety*

The court here clearly recognized that it had discretion to dismiss enhancements under section 1385. The court cited *Mendoza* and found that the circumstances in the instant case were more dangerous than in that case. It stated: "[T]his defendant, and the Court is mindful of his youth, that he was only 18 at the time of the commission of this offense, didn't just discharge his firearm at a single person, he discharged his firearm at multiple people. He missed Mr. Lopes on multiple occasions and then opened up on a car that he absolutely knew contained more than one person. [¶] He fired a total of six shots." The court noted that defendant was the person who escalated the use of force to deadly weapons. It then stated: "To strike this punishment, and I'm aware that I can make it less, but to strike this punishment under 12022.5(h) would not be in the interest of justice. It would be a danger to society. People who actually use firearms in the way that the defendant used them here are absolutely and without exception a danger to public safety, and for that reason I am not exercising my 12022.53(h) discretion."[11] In light of its finding that dismissal of the enhancement would endanger public safety, the court was not required to "consider and afford great weight" to evidence of the mitigating circumstances cited by defendant. (§ 1385, subd. (c)(2); *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18.)

---

[11] Section 12022.53, subdivision (h) provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

19

Thus, the court properly declined to exercise its discretion to dismiss the enhancements, finding it would endanger public safety. (§ 1385, subd. (c)(2).) In light of the court's consideration of the circumstances of the current offenses, we cannot say its determination that dismissal of the enhancements would endanger public safety was an abuse of discretion. Finally, in view of all the facts and circumstances considered by the trial court, we see no abuse of discretion in the court's determination that dismissal of the enhancements was not in the interest of justice. Such determination provides an additional basis to support the court's denial of the request to dismiss the enhancements. (See, *People v. Walker* (2024) 16 Cal.5th 1024, 1029.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

RAMIREZ
P. J.

MILLER
J.