[No. H018981. Sixth Dist. Dec. 27, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
YVONNE DOLORES CHARDON, Defendant and Appellant.

## COUNSEL

Timothy C. Cronin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Jeffrey M. Laurence, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, J.**—Defendant was granted probation after she was convicted by jury trial of felony false personation (Pen. Code, § 529) and misdemeanor driving with a suspended license (Veh. Code, § 14601.1, subd. (a)). On appeal, she claims that (1) the evidence was insufficient to support the felony conviction, (2) the felony conviction was improper because Vehicle Code section 40504, subdivision (b) is a special statute which governs over the more general Penal Code section 529, (3) the misdemeanor count was barred by the statute of limitations, (4) the court erred in imposing penalty assessments and (5) the court abused its discretion in imposing a probation search condition. We affirm.

### FACTS

Defendant's driver's license was suspended in December 1988. On June 26, 1996, California Highway Patrol (CHP) Officer Dean Deascentis detained a burgundy-colored Honda with the license plate No. 2UVV327 after observing the Honda travelling down Highway 280 at a speed of 95 miles per hour. Defendant was driving the Honda. Deascentis asked defendant for her identification, registration and insurance information. She claimed that she did not have her license with her or any registration information for the vehicle. Deascentis asked whom the Honda belonged to, and defendant said the Honda belonged to her boyfriend Gary Wesley who was an attorney. Defendant told Deascentis that her name was "Michelle" Chardon. Michelle

Chardon is defendant's sister. Defendant also provided Deascentis with her sister's middle name and date of birth. Deascentis returned to his motorcycle and ran a license check using this information. This check showed that "Michelle" Chardon with that birthdate had a valid license with no holds or warrants. Deascentis wrote up a citation in Michelle's name.

When Deascentis returned to the Honda with the citation, he noticed a job application on the passenger seat bearing the name "Yvonne." He asked defendant about the application, and she told him that it belonged to her sister. Defendant also said that both she and her sister were applying to work at the same place and she was on her way to a job interview. Defendant signed Michelle's name to the citation's "promise to appear." Deascentis also had defendant place her thumbprint on the back of the citation. The entire detention lasted 10 to 12 minutes. On August 9, 1996, a warrant issued for Michelle's arrest.

Deascentis subsequently identified defendant as the driver of the Honda to whom he had issued the citation. The thumbprint on the back of the citation proved to be defendant's thumbprint. On July 9, 1997, CHP Sergeant Michael Dust encountered defendant driving the Honda. Defendant told Dust that the Honda belonged to "her fiance" Attorney Gary Wesley. She explained that only she and Wesley drove the Honda. Dust asked defendant if she knew of anyone who might be using her sister Michelle's name. Defendant said she did not know anyone who would do that. On September 16, 1997, Dust spoke to defendant's sister Michelle Chardon. When he told Michelle that her sister had used her name, Michelle expressed disbelief and surprise.

The initial felony complaint charging defendant with felony false personation (Pen. Code, § 529) and misdemeanor driving with a suspended license (Veh. Code, § 14601.1, subd. (a)) was filed on October 6, 1997. The complaint pleaded that the misdemeanor offense had not been discovered until July 1, 1997 because defendant had concealed her identity. Defendant was subsequently charged by information with felony false personation (Pen. Code, § 529) and misdemeanor driving with a suspended license (Veh. Code, § 14601.1, subd. (a)). Her motion to dismiss on the ground that the felony count was not supported by the evidence presented at the preliminary hearing was denied.

At the commencement of trial, defendant sought dismissal of the misdemeanor count on the ground that it was time-barred because it had not been filed within the one-year statute of limitations period. The court held off ruling on this request to give the prosecution the opportunity to respond.

After the prosecution rested, defendant sought acquittal on the felony count based on insufficiency of the evidence. She also renewed her contention that the misdemeanor count was barred by the statute of limitations. The court denied both motions. The jury returned guilty verdicts on both counts.

Defendant had two prior convictions for driving on a suspended license (Veh. Code, § 14601.1, subd. (a)). In addition, at the time of sentencing, defendant was facing a separate charge of giving false identification to a peace officer (Pen. Code, § 148.9). On October 27, 1997, a CHP officer had attempted to serve a warrant for defendant's arrest. Defendant had denied that she was "Yvonne Chardon," said that there were no warrants for her and stated her name was "Bonnie" Chardon.[1] Because the officer had a photograph of defendant, he was not misled and placed defendant under arrest.

The probation department recommended imposition of "a moderate County Jail sentence." At the commencement of the sentencing hearing, the court stated that its "tentative decision" was to grant probation "with the normal terms and conditions" and a 120-day jail sentence which it would stay on condition that defendant complete 200 hours of community service with a year. Defendant's trial counsel argued that a 120-day jail sentence was "excessive" and should be reduced. The prosecution argued that the jail sentence should not be stayed, but conceded that a 90-day jail sentence "is more than appropriate."

The court granted defendant probation with numerous conditions. It imposed and stayed a 90-day jail sentence and agreed to make the stay permanent if defendant performed 200 hours of community service within a year. The court also required defendant to agree to a search and seizure waiver as a condition of her probation. Fines of $5,000 "plus penalty assessment[s]" of $8,500 were imposed. Defendant expressly accepted probation on these terms and conditions, and her trial counsel raised no objections. Defendant filed a timely notice of appeal.

## DISCUSSION

### A. *Sufficiency of the Evidence*

Defendant asserts that the prosecution's evidence failed to establish that she had committed "an act . . . in addition to falsely identifying herself to Deascentis, that would elevate her crime from a Penal Code section 148.9, subdivision (a) misdemeanor to a Penal Code section 529, subdivision 3 felony." We find the evidence sufficient to support the felony conviction.

---

[1] Defendant's mother testified at trial that defendant's nickname was "Bonnie."

" '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 61 L.Ed.2d 560], italics in original.) "[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; accord, *People v. Pensinger* (1991) 52 Cal.3d 1210, 1237 [278 Cal.Rptr. 640, 805 P.2d 899].)

"Every person who falsely personates another in either his private or official capacity, and in such assumed character . . . [¶] . . . [¶] . . . [d]oes any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person" commits the offense of false personation. (Pen. Code, § 529.) False personation is punishable as either a felony or a misdemeanor. (Pen. Code, § 529.) Defendant contrasts the offense of false personation with the offense of false identification. "Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to [certain law enforcement officers including CHP officers], upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor." (Pen. Code, § 148.9, subd. (a).)

Only two published cases have considered the distinction between a Penal Code section 529 offense and a Penal Code section 148.9 offense.[2] In *People v. Robertson* (1990) 223 Cal.App.3d 1277 [273 Cal.Rptr. 209], the defendant gave his brother's name when he was arrested and, the next day, when he was released from jail, signed his brother's name to the "booking form" and to the "own-recognizance release form." (*Robertson, supra,* at p. 1279.) The ultimate result of his conduct was that his brother was unjustly incarcerated for more than a year. His sole contention on appeal was that he had committed only a Penal Code section 148.9 offense rather than a Penal Code section 529 offense. (*Robertson, supra,* at pp. 1279-1280.) Pointing out that Penal Code section 148.9 could be violated without violating Penal Code section 529 and vice versa, the court rejected the defendant's claim that the

---

[2]A third published opinion discussed in the parties' briefs no longer exists. The California Supreme Court granted review in that case in May 1999. (*Lee v. Superior Court* (Cal.App.) review granted May 12, 1999, S077289.)

"specific over general" rule required reversal of the Penal Code section 529 conviction. (*Robertson, supra,* at p. 1282.)

In *People v. Cole* (1994) 23 Cal.App.4th 1672 [28 Cal.Rptr.2d 788], the defendant was arrested and orally identified himself to the arresting officer as "Larry Quesenberry" and provided Quesenberry's date of birth. When the officer asked the defendant if his middle name was "Ray," which was Quesenberry's middle name, the defendant replied affirmatively. (*Cole, supra,* at p. 1674.) The defendant challenged the sufficiency of the evidence to support his false personation conviction. He argued that there was no evidence that he had committed the required "act," in addition to the false personation itself, which was required for a conviction under Penal Code section 529. (*Cole, supra,* at p. 1675.) The Attorney General maintained that the defendant's provision of a date of birth and affirmative response to the query about a middle name constituted the required act. (*Ibid.*) The appellate court rejected the Attorney General's contention. "[G]iving a false birth date and middle name was no more than part of the act of providing the false information upon which the false identity was based. Each statement made in the course of providing contemporaneous statements amounting to false identification logically cannot be construed·as separate acts compounding each prior statement." (*Cole, supra,* at p. 1676.)

█ Based on *Cole* and *Robertson,* defendant argues that her acts were all "part of the act of providing the false information" and did not include "any other act" which would expose her sister to liability. The evidence is to the contrary. Unlike the defendant in *Cole* who simply orally identified himself to the officer by providing first, last and middle names and a birthdate, defendant here engaged in an *additional* act of false personation which exposed her sister to further criminal liability. After defendant provided the false identification information, Deascentis returned to his vehicle, checked the validity of her sister's license and returned with the citation. At that point, defendant *signed her sister's name* to the citation's promise to appear. By doing so, she committed an *additional act* which exposed her sister not only to liability for the citation but also to potential criminal liability for failing to appear at the scheduled hearing. This potential was actually realized when Michelle failed to appear and a warrant issued for Michelle's arrest.

While defendant argues that this additional act is insufficient to qualify under the statute because it occurred on the *same occasion* as the initial false identification, the statute does not require the additional act to occur on a *separate occasion.* Penal Code section 529 only requires that there *be* an additional act by the perpetrator which exposes the impersonated person to

liability or benefits the perpetrator or another. Defendant engaged in such an act by forging Michelle's signature on the citation's promise to appear thereby exposing Michelle to liability not only for the citation but also for failing to appear at the scheduled hearing. Substantial evidence supports the felony conviction for false personation.

## B. *Special Over General Rule Inapplicable*

Defendant asserts that she could not be convicted of false personation because a more specific misdemeanor statute, Vehicle Code section 40504, subdivision (b), applied to her conduct precluding prosecution under the more general false personation statute.

" 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' " (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], *In re Shull* (1944) 23 Cal.2d 745, 750 [146 P.2d 417].) This rule has become known as the *Williamson* rule. (*People v. Jenkins* (1980) 28 Cal.3d 494, 502 [170 Cal.Rptr. 1, 620 P.2d 587].) When the *Williamson* rule applies, the special statute precludes prosecution under the general statute. (*Id.* at p. 505.) The *Williamson* rule is designed to ascertain and carry out legislative intent. (*Ibid.*)

Defendant claims that the *Williamson* rule applies here and precludes her false personation conviction. The *Williamson* rule applies when either (1) "each element of the 'general' statute corresponds to an element on the face of the 'specific' statute," or (2) "a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute." (*People v. Jenkins, supra,* 28 Cal.3d 494, 502.) Defendant implicitly concedes that Vehicle Code section 40504, subdivision (b) does not contain elements which correspond to each element of the offense of false personation. Vehicle Code section 40504, subdivision (b) prohibits any false *or fictitious* signature on a promise to appear. "Any person who signs a written promise to appear with a false or fictitious name is guilty of a misdemeanor regardless of the disposition of the charge upon which he was originally arrested." (Veh. Code, § 40504, subd. (b).) In contrast, Penal Code section 529, subdivision 3 prohibits *impersonation* of a *real* person where the impersonation is accompanied by an act which may harm the impersonated person or benefit the perpetrator or a third party. (Pen. Code, § 529, subd. 3.)

Defendant maintains that a violation of Vehicle Code section 40504, subdivision (b) will *commonly result in* a violation of Penal Code section

529, subdivision 3. While a false signature on a promise to appear is an act that may commonly harm the person whose name is forged or benefit another, this is only one of the ways that Vehicle Code section 40504, subdivision (b) may be violated. An equally "common" violation of Vehicle Code section 40504, subdivision (b) would be committed by signing a *fictitious* name on the promise to appear. A *fictitious* signature on a promise to appear cannot violate Penal Code section 529, subdivision 3 because the false personation statute applies only to impersonations of *real* persons. Hence, under the *Williamson* rule, Vehicle Code section 40504, subdivision (b) is *not* a special statute which controls over Penal Code section 529, subdivision 3 because the Vehicle Code violation will not necessarily or commonly result in a violation of the false personation statute. (See *People v. Robertson, supra*, 223 Cal.App.3d 1277 [Penal Code section 148.9 is not a special statute which controls over Penal Code section 529, subdivision 3 because Penal Code section 148.9 is violated when a person identifies himself or herself as a fictitious person and Penal Code section 529, subdivision 3 is violated only when one impersonates a real person].)

■ "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is *determinative* of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . .' " (*People v. Jenkins, supra*, 28 Cal.3d at pp. 505-506, footnote omitted, italics added.)

■ Here, the overlap between Penal Code section 529, subdivision 3 and Vehicle Code section 40504, subdivision (b) is not significant enough to support a conclusion that the Legislature intended for Vehicle Code section 40504, subdivision (b) to preclude prosecutions under Penal Code section 529, subdivision 3. The elements of the two offenses do not correspond, and a violation of Vehicle Code section 40504, subdivision (b) will not necessarily or commonly result in a violation of Penal Code section 529, subdivision 3. Defendant was properly convicted of violating Penal Code section 529, subdivision 3.

## C. *Statute of Limitations*

Defendant asserts that the driving on a suspended license count was barred by the statute of limitations because the complaint was not filed on that

count until more than a year after the June 1996 citation. The citation was issued on June 26, 1996. It charged "Michelle" Chardon with speeding, following too closely, driving while failing to have a valid driver's license in her possession (Veh. Code, § 12951) and failing to have registration information in the vehicle. The initial complaint charging defendant with driving with a suspended license was filed on October 6, 1997.

"Except [for violations of Penal Code section 647.6 or former Penal Code section 647a], prosecution for an offense not punishable by death or imprisonment in the state prison shall be commenced within one year after the commission of the offense." (Pen. Code, § 802, subd. (a).) "No time during which prosecution of the same person for the same conduct is pending in a court of this state is a part of a limitation of time prescribed in this chapter." (Pen. Code, § 803, subd. (b).) A prosecution is "commenced" when a complaint is filed charging a misdemeanor or infraction. (Pen. Code, § 804, subd. (b).) The citation prepared by Deascentis constituted a "complaint" that commenced a timely prosecution on the failure to possess a driver's license violation. (Pen. Code, § 853.9.)

Defendant argues that Penal Code section 803, subdivision (b) does not apply to misdemeanors. Alternatively, she urges that neither the citation nor the subsequent warrant commenced a prosecution against *her* for *driving with a suspended license* because the prosecution commenced was against a *different* person for *different* conduct.

The limitation of time for commencing a prosecution for driving with a suspended license is set forth in Penal Code section 802, subdivision (a). Both Penal Code section 802 and Penal Code section 803 are contained in chapter 2 of title 3 of part II of the Penal Code. Penal Code section 803, subdivision (b) expressly states that its provisions are applicable to any "limitation of time *prescribed in this chapter.*" (Pen. Code, § 803, subd. (b), italics added.) Obviously, Penal Code section 802, subdivision (a)'s limitation of time is one of those to which Penal Code section 803, subdivision (b)'s provisions are applicable. Defendant's argument is expressly refuted by the clear statutory language.

■ Her alternative contention also lacks merit. The mere fact that defendant was charged under the name *she provided* to Deascentis did not invalidate the 1996 citation-complaint's commencement of a prosecution against *her* for *her* driving offenses. An individual may be validly charged by a fictitious or erroneous name, and the true name of the defendant may be substituted for the fictitious or erroneous name at "any stage of the proceedings." (*Ernst v. Municipal Court* (1980) 104 Cal.App.3d 710, 718 [163

Cal.Rptr. 861]; Pen. Code, § 953.) The justice system is not so easily manipulated that a defendant can conceal his or her true identity until after the expiration of the limitations period and then claim that a valid complaint is barred. It is undisputed that defendant was the driver to whom the June 1996 citation was issued. This citation charged defendant, using the name she had claimed as her own, with violating Vehicle Code section 12951, subdivision (a).

The 1996 citation-complaint's allegation that defendant had violated Vehicle Code section 12951, subdivision (a) charged defendant with an offense involving the *same conduct* as the misdemeanor driving on a suspended license count on which she was ultimately charged and convicted. In *People v. Whitfield* (1993) 19 Cal.App.4th 1652 [24 Cal.Rptr.2d 210], the Third District Court of Appeal held that a pleading charging the defendant with rape charged the "same conduct" for purposes of Penal Code section 803, subdivision (b) as the offense of prostitution because both offenses involved the same *act*—sexual intercourse. (*Whitfield, supra,* at pp. 1659-1660.) Similarly, here both the Vehicle Code section 12951, subdivision (a) count and the Vehicle Code section 14601.1, subdivision (a) count charged the same *act*. Vehicle Code section 12951, subdivision (a) is violated when a person who does not possess a "valid driver's license" drives a vehicle. (Veh. Code, § 12951, subd. (a).) Vehicle Code section 14601.1, subdivision (a) is violated when a person whose driver's license has been suspended or revoked drives a vehicle. (Veh. Code, § 14601.1, subd. (a).) As in *Whitfield,* the two charged offenses were based on the same act: defendant's driving of the Honda on June 26, 1996. The minor distinction between the fact of defendant's lack of possession of a valid license and the fact that defendant's driver's license had been suspended did not change the nature of her illegal act.

The Vehicle Code section 14601.1, subdivision (a) count was not time-barred.

## D. *Penalty Assessments*

The trial court imposed $5,000 in fines "plus penalty assessment[s]" of $8,500. Defendant claims on appeal that the court erred in imposing penalty assessments that exceeded the statutory maximum. This is a frivolous assertion.

The amounts of the required penalty assessments are set forth in Penal Code section 1464 and Government Code section 76000. Imposition of each of these assessments is mandatory (*People v. Heisler* (1987) 192 Cal.App.3d

504, 506-507 [237 Cal.Rptr. 452]; *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1521 [77 Cal.Rptr.2d 492]), and the trial court correctly calculated the amounts of the two assessments. "Subject to Chapter 12 (commencing with Section 76000) of Title 8 of the Government Code, there shall be levied a state penalty, in an amount equal to ten dollars ($10) for every ten dollars ($10) or fraction thereof, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." (Pen. Code, § 1464, subd. (a).) "In each county there shall be levied an *additional* penalty of seven dollars ($7) for every ten dollars ($10) or fraction thereof which shall be collected together with and in the same manner as the amounts established by Section 1464 of the Penal Code, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." (Gov. Code, § 76000, subd. (a), italics added.) The trial court correctly calculated that these penalty assessments totalled $8,500 based on the $5,000 in fines imposed. There was no error.

### E.   *Search and Seizure Condition*

██ Defendant accepted a search and seizure waiver as a condition of her probation. Although her trial counsel did not object to this condition below, she claims on appeal that the trial court abused its discretion in imposing this condition and, alternatively, that her trial counsel was ineffective in failing to object to this condition. Since we find no abuse of discretion, we necessarily reject both claims.

██ Trial courts have broad discretion to impose such reasonable probation conditions "as it may determine are fitting and proper to the end that justice may be done . . . and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (Pen. Code, § 1203.1, subd. (j); *People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' (*People v. Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].)" (*People v. Lent, supra*, 15 Cal.3d 481, 486.)

██ Defendant repeatedly drove even though her license had been suspended, and she also misled more than one police officer about her identity in order to avoid the consequences of her behavior. Her current offenses involved both types of conduct. When Deascentis sought identification, she denied having any and gave a false explanation for the job application bearing her true name. The trial court could have concluded that

a search and seizure condition would help to reform and rehabilitate defendant by discouraging her from attempting to conceal her identity in the future either by falsely denying possession of identification or by becoming more sophisticated in her criminality and producing false identification. We cannot say that the trial court abused its discretion in reaching such a conclusion. Similarly, defendant's trial counsel's failure to object was not prejudicial because there is not a reasonable probability that an objection would have resulted in the omission of the challenged condition.

## CONCLUSION

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Wunderlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 12, 2000.