Filed 8/23/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE, | H044458 |
| Plaintiff and Respondent, | (Orange County Super. Ct. No. 13CM02795) |
| v. | |
| BRIAN JOSEPH EASTMAN, | |
| Defendant and Appellant. | |


Defendant Brian Joseph Eastman was convicted by guilty plea of six counts of misdemeanor disorderly conduct (Pen. Code, § 647, subd. (j)(2)),[1] and he admitted allegations "pursuant to Penal Code section 290.006" that the six counts had been "committed . . . as a result of sexual compulsion and for purposes of sexual gratification."[2] Defendant had repeatedly used his cell phone to make "upskirt" videos of women in public places and had concealed a camera in the bathrooms of two residences so that he could videorecord women using the bathrooms. The trial court suspended imposition of sentence and granted him probation. The court also found that defendant

---

[1]     Subsequent statutory references are to the Penal Code unless otherwise specified.

[2]     Section 290.006 provides: "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (§ 290.006, subd. (a).)

had committed the offenses for sexual gratification or compulsion (§ 290.006) and ordered defendant to register as a sex offender under section 290 for the rest of his life.[3]

Defendant appealed to the appellate division.[4] He argued that the trial court had failed to exercise its discretion because it erroneously believed that it could not order sex offender registration only for the period of probation rather than for his lifetime. Defendant also contended that the trial court had abused its discretion in ordering registration under section 290.006 because it had failed to consider individualized factors. The appellate division held that the trial court had discretion to impose sex offender registration solely as a condition of probation and remanded the matter for the trial court to exercise that discretion. We transferred the case to this court, and we now reject the appellate division's holding and affirm the trial court's order.

## I.  Background

On the evening of March 22, 2013, defendant, who was then 26 years old, followed K.C. around a clothing store and eventually blocked her only exit route, crouched down, and used his cell phone to take pictures "under her skirt." K.C. felt threatened by defendant's conduct. She followed defendant into the parking lot, took down his license plate number, and immediately reported the incident to the store manager and then to the police. The police contacted defendant at his residence, and he quickly admitted that he had "'screwed up'" and done as K.C. reported. He was arrested, and his cell phone was seized.

---

[3]     Section 290 imposes a requirement that a person register as a sex offender "for the rest of his or her life . . . ."  (§ 290, subd. (b).

[4]     After defendant was sentenced by the Orange County Superior Court, his case was transferred to the Santa Clara County Superior Court. His appeal was decided by the Santa Clara County Superior Court Appellate Division.

2

Defendant told the police that he had "specifically targeted women wearing skirts," pursued them through the store, and used his cell phone to record under their skirts. He "admitted capturing the video, and then editing it into still frames." Defendant also "acknowledged that the content of the video was sexual, but said that was not his motivation." He claimed that "he enjoyed the challenge of acquiring the footage . . . ." Defendant "admitted he engaged in this activity for approximately two weeks." The police found video on defendant's cell phone of seven women, which had been recorded on March 22, 2013. His cell phone also contained footage of several different women using bathrooms at residences on multiple occasions in 2012 and 2013.

Defendant was charged by amended complaint with six counts of disorderly conduct. The amended complaint expressly alleged "pursuant to Penal Code section 290.006" that the six counts had been "committed . . . as a result of sexual compulsion and for purposes of sexual gratification." Defendant pleaded guilty to all six counts and admitted the section 290.006 allegations.

Defendant asked the court not to require sex offender registration. He had begun psychotherapy on March 27, 2013, and was continuing with this therapy at the time of his November 2014 sentencing. His psychotherapist recommended that he continue treatment for another six to nine months. However, her evaluation was based on her conclusion that defendant did not qualify for a diagnosis of voyeurism because she mistakenly believed that "the incident in question [did not] continue for a period of 6 months." She did not believe that sex offender registration should be required because she thought defendant did not "pose a danger to others or society." Defendant told the court that his psychotherapist had assured him that he was not a sexual deviant and posed no threat to others.

Defendant was also examined by a court-appointed psychiatrist, Dr. Ted R. Greenzang. Defendant misled Greenzang about the duration of his misconduct. He told Greenzang that all of the misconduct occurred during a period of two to three weeks prior

to his arrest, and Greenzang erroneously accepted that all of the misconduct occurred during a one month period.[5] Thus, Greenzang, like defendant's psychotherapist, concluded that the duration of the misconduct did not qualify for a diagnosis of voyeurism, although Greenzang did note that defendant had "obsessive compulsive personality traits." Based on defendant's misleading report of limited-duration misconduct, Greenzang also concluded that it was not necessary for defendant to register as a sex offender because defendant did not "pose a danger to others" and was unlikely to engage in similar offenses in the future.

Defendant told the probation officer that "he did not make the recordings for sexual stimulation." He claimed that he engaged in this conduct in response to the "challenge" of " 'getting that shot' " "without getting caught," and "the risk and danger added to the thrill." Defendant asserted that "the videos were never viewed for sexual gratification." The probation officer deemed defendant's explanation "rather absurd" and "a blatant attempt to minimize what is viewed as fairly serious behavior." She was concerned that defendant "has minimized much of his behavior." The probation officer concluded that it was "plausible" that defendant "has, or at some point will, reoffend" because his conduct was suggestive of "a compulsion." The probation report recommended that defendant be required to register as a sex offender "pursuant to 290.006 of the Penal Code, at least for the duration of his probation period." The report suggested that if defendant was successful on probation, "the registration order [could] be terminated upon successful completion of probation."

The prosecutor sought a sentence of three years of probation, one year in jail, "290 registration," and "sex offender terms of probation." The prosecution asked the trial

---

[5] While the charged offenses all occurred within a month of defendant's arrest, the sexually oriented videos on his cell phone dated back nearly a year, thus demonstrating that defendant had engaged in similar conduct throughout that period.

4

court to exercise its discretion under section 290.006 to require defendant to register as a sex offender under section 290. She agreed with the probation officer that "to say that this conduct is not sexually motivated is completely absurd." In her view, although defendant admitted the acts, there was a "complete lack of [taking] responsibility for the motivation and for the nature of his crimes." She argued that defendant's crimes were "aimed at vulnerable, unsuspecting women," some of whom were "women he's built trust with . . . ." "To say that there is no risk of recidivism is completely contradictory to the facts in this case and what the defendant, by his own conduct, has shown." She claimed that defendant "tries to pull the wool over the eyes of the medical evaluators."

The court explained that it had ordered the psychiatric report and the probation report and considered defendant's therapist's report "to make sure that no stone was left unturned." Although the court wished it could impose a five-year term of probation rather than three years, that was prohibited by law. The court suspended imposition of sentence and placed defendant on formal probation for three years with a stayed jail term of 210 days.[6] The court ordered defendant to submit to psychological or psychiatric treatment as directed by the probation officer. Defendant was not to possess "any device that is capable of recording any image."

The court provided a detailed explanation of why it was exercising its discretion to require defendant to register as a sex offender under section 290. "It's a discretionary statute in this particular case, and the court could only find it to be a requirement in a case like this, where the court [finds] . . . that these offenses were committed as a result of sexual compulsion or for the purposes of sexual gratification. [¶] . . . [T]he statements of Mr. Eastman were troubling to the court to say the least, because they appeared to be

---

[6] The court found as mitigating factors that defendant had immediately cooperated with the police upon being confronted, "continually expressed remorse," which the court found to be "genuine" and not self-serving, and had been "very active in his therapy."

extremely self-serving statements on the issue of whether or not he would be required to register pursuant to 290 of the Penal Code." "The fact that the defendant followed the victim on March 22, 2013 . . . blocking her in an aisle is of particular concern . . . as that contact affects the victim in that incident, that she would feel threatened is hardly surprising. [¶] The facts . . . could certainly have warranted [an] additional charge of false imprisonment, which could have . . . amounted to a felony." Defendant "specifically targeted women wearing skirts and pursued them throughout a store." That he "minimized his behavior to report preparers . . . is of great concern to the court as to any further danger posed by Mr. Eastman." His explanation for his conduct, " 'to see if he could get away with it,' " was "disingenuous to the extreme." The court found that the mental health professionals' acceptance of that explanation "makes one question their objectivity."

The court rejected defendant's proffered explanation and concluded that defendant's "conduct is clearly sexual in nature, and it's the type of conduct that the court would venture to guess, is, in the very least, unsettling to any women who m[a]y be targeted by such conduct, either in the past or in the future." "[A] total of 13 separate women were targeted and imaged in this fashion. It would not be a stretch of the imagination to assume that if someone were surreptitiously filming someone for the sole purpose of trying to do so undetected, the gender of the potential target would be irrelevant." The incidents were not spontaneous but instead "indicative of sophisticated prior planning." "For a court to make a finding that these acts all involving women over an 11-month period were not sexual in nature . . . would be woefully unfaithful to the facts of th[is] case. [¶] These were not isolated incidents, these spanned a known period of eleven months." The court was not convinced that defendant's conduct was unlikely to reoccur, noting that "there is no way to know when whatever part of your makeup gets you to do something like that is going to resurface."

Based on these findings, the court concluded "that the offenses committed by the defendant were committed by him as a result of sexual compulsion and for the purposes of sexual gratification" and that defendant should be required "to register pursuant to Penal Code 290 as required by law."[7] The court rejected the suggestion that it could limit the duration of the registration requirement. "Penal Code section 290 and Penal Code section 290.006. [¶] Although there are [a] tremendous [number] of terms and conditions that go along with those two particular statutes, they lack one very distinct facet of their being, and that is that they take nothing into consideration with respect to whether or not a period of registration is limitless or can be limited. [¶] I found it interesting that the probation officer made reference to the fact that it was of her opinion that Mr. Eastman should be required to register pursuant to 290 only during the period of his probation; there is no provision in the law for that. [¶] 290 is an all or nothing statute." While the court "agreed with the probation officer that the duration of registration would be applicable for the period of probation only, and that it should be reviewed prior to termination of probation, but that is not something -- an order that the court can make based upon current law." "Penal Code section 290, even under 290.006 carries a lifetime registration requirement unless certain criteria are met, none of which apply at this time."

The court noted that the requirement it was imposing that defendant register under section 290 was "why I didn't put him in jail for a year . . . because for all intent and purposes, I put him in jail." "[I]f I were going to be a landlord or I'm going to rent or I'm going to have a housemate, and that person were somebody that might violate my privacy in that way, had I known, had any of them known, they never would have put themselves in that position, and that is why I ordered 290 . . . ." "I would think that anyone that we

---

[7] The court "specifically excluded the guilty pleas and the factual basis from its findings as supporting with [*sic*] defendant's intent."

7

are going to share a residence with . . . would want to know that this is a guy that might put a pinhole camera in a wall and watch you change your clothes or watch you use the bathroom or watch whatever."

Defendant appealed to the appellate division. The appellate division held that the trial court had erroneously believed that it lacked discretion to order defendant to register only as a probation condition for the duration of the probationary period, and it remanded the matter to the trial court to permit it to exercise that discretion. We ordered this case transferred to this court.

## II. Discussion

### A. Sex Offender Registration May Not Be Imposed As A Probation Condition

Defendant contends on appeal that "sex-offender registration may be imposed solely as a condition of probation outside the boundaries of Penal Code section 290 *et seq.*" He claims that "neither Penal Code section 290 [n]or section 290.006 limit[s] a court's power to impose sex-offender registration as a condition of probation, and thus outside the boundaries of the Sex Offender Registration Act."

Defendant relies heavily on *People v. King* (2007) 151 Cal.App.4th 1304 (*King*), but the *King* court did not consider this issue. In *King*, the defendant challenged his conviction for failing to register as a sex offender on the ground that he was not required to register as a sex offender under section 290. The defendant's underlying conviction was for unlawful sexual intercourse with a minor (§ 261.5), an offense not subject to mandatory registration. (*King*, at pp. 1307-1308.) While that offense could have been the basis for discretionary registration if the trial court had made the findings required by what is now section 290.006, the trial court that sentenced the defendant for the section 261.5 offense had made no such findings and had not purported to impose discretionary registration under the predecessor to section 290.006. (*King*, at pp. 1307-1308.) Instead, when defendant was sentenced for the section 261.5 offense pursuant to a

8

plea bargain, "[a]mong the agreed-upon conditions of probation was the requirement that appellant register as a sex offender during the five-year probationary period." (*King*, at p. 1306.)

The sole contention on appeal in *King* was that because the sentencing trial court had not ordered discretionary registration under section 290.006's predecessor statute, the defendant's failure to register was not a violation of section 290. (*King*, *supra*, 151 Cal.App.4th at p. 1308.) The Court of Appeal agreed: "[T]he trial court did not impose the five-year registration requirement under [section 290]. It simply imposed it as a condition of probation." (*King*, at p. 1309.) Since defendant had not challenged and could not have challenged the agreed-to probation condition, the validity of the probation condition was not at issue. Hence, the Court of Appeal was not required to consider whether a trial court has the power to impose such a probation condition. "[I]t is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.) Thus, *King* provides no support for defendant's position in this case.

Defendant's reliance on *People v. Allexy* (2012) 204 Cal.App.4th 1358 (*Allexy*) is also misplaced. In *Allexy*, the defendant, who had sexually molested a 14-year-old boy, pleaded guilty to felony child endangerment, an offense for which sex offender registration is not mandated. (*Allexy*, at pp. 1360-1361.) The court imposed a four-year prison sentence, stayed execution of this sentence, placed the defendant on probation, and told her that it would impose discretionary sex offender registration under section 290.006 if she violated probation. The defendant agreed to that proviso. (*Allexy*, at pp. 1361-1362.) A year later, she twice violated probation. The court revoked her probation, ordered execution of the prison sentence, and, exercising its discretion under section 290.006, ordered her to register as a sex offender under section 290. (*Allexy*, at p. 1362.)

9

On appeal, she challenged the registration requirement on the ground that the court had failed to state reasons as required by section 290.006 and had "violated her right to a jury trial" by imposing the registration requirement. (*Allexy*, *supra*, 204 Cal.App.4th at p. 1362.) Before addressing the defendant's appellate contentions, the Court of Appeal pointed out, in the only published portion of the opinion, that the trial court had not complied with section 290.006's explicit requirement that the court make the necessary findings and impose registration "at the time of conviction or sentencing."[8] (*Allexy*, at p. 1363.) The Court of Appeal noted that the trial court could have properly deferred a decision on registration by suspending imposition of sentence, rather than merely suspending execution of sentence, thereby permitting the registration decision to be made at a subsequent sentencing hearing if the defendant violated probation. (*Allexy*, at p. 1363.) This dicta in *Allexy* does not support defendant's position in this case. Here, the trial court did not express a desire to defer a decision on registration. Instead, the court manifestly wished to impose a registration requirement that would be immediately effective and continue throughout defendant's probation, not one that would take effect only after a probation violation.

Defendant cites no authority supporting his position but only authority for the well-recognized proposition that trial courts have broad discretion to craft probation conditions. A trial court has "broad discretion to impose such reasonable probation conditions 'as it may determine are fitting and proper to the end that justice may be done . . . and generally and specifically for the reformation and rehabilitation of the probationer . . . .'" (*People v. Chardon* (1999) 77 Cal.App.4th 205, 217; § 1203.1, subd. (j).) Nevertheless, the fact that trial courts have broad discretion to craft probation

---

[8] The defendant did not challenge the trial court's ruling on this basis and could not because she had agreed to this procedure, thereby inviting error and forfeiting the contention. (*Allexy*, *supra*, 204 Cal.App.4th at p. 1363.)

conditions does not establish that a trial court has the power to carve out an exception to a comprehensive statutory scheme in order to design a probation condition that utilizes some, but not all, of the provisions of that scheme.

The "Sex Offender Registration Act" (the Act) was created by the Legislature to serve as a "comprehensive," "standardized, statewide system to identify, assess, monitor and contain known sex offenders for the purpose of reducing the risk of recidivism posed by these offenders, thereby protecting victims and potential victims from future harm." (§§ 290, subd. (a), 290.03, subds. (a) & (b).)  The very nature of a "comprehensive" and "standardized, statewide system" is that it is not amenable to inconsistent directives crafted by individual trial courts in 58 different counties on a case-by-case basis.  Just as a trial court may not order an individual to register under section 290 when that individual does not fall within the scope of the Act, a trial court may not order an individual to register under section 290 under conditions that are inconsistent with the requirements of section 290, such as the Act's duration provisions.

Our view of the Act's exclusivity is not novel.  In *In re Bernardino S.* (1992) 4 Cal.App.4th 613 (*Bernardino*), after the minor admitted a forcible lewd conduct count, the juvenile court declared him a ward and placed him on probation.  It also ordered him to register as a sex offender under section 290.  (*Bernardino*, at p. 617.)  In fact, section 290 applied only to minors committed to the California Youth Authority, not juvenile probationers like the minor.  (*Bernardino*, at pp. 619-620.)  The minor challenged the registration requirement on appeal, and the Attorney General contended that "the juvenile court possessed the power to require registration, in an exercise of its dispositional discretion, even if appellant did not come within the terms of Penal Code section 290." (*Bernardino*, at p. 621.)

The Court of Appeal rejected the Attorney General's contention that the juvenile court had discretion to order registration inconsistent with the provisions of the Act. While acknowledging that juvenile courts have broad discretion to craft dispositional

orders, akin to an adult court's discretion to craft probation conditions, the court observed that this power, "while broad, is not boundless." (*Bernardino*, *supra*, 4 Cal.App.4th at p. 622.) A probation condition may not "operate[] to circumvent a prescribed statutory procedure and thereby nullify a manifest legislative policy." (*Id.* at p. 623.) "[T]he legislative determination of who should register and who should not is exclusive, and . . . the trial court cannot expand the legislative classification through its power to impose conditions of probation." (*Id.* at p. 624.)

Defendant claims that *Bernardino* is irrelevant because it concerned a defendant who was outside the scope of section 290 at a time before discretionary registration existed.[9] He maintains that *Bernardino* was concerned solely with the impropriety of requiring registration where "a defendant [was] convicted of a crime not listed" in the Act. Defendant misreads *Bernardino*. The problem in *Bernardino* was not that the *offense* was not listed in the Act (it was), but that the offender was not subject to registration because he was a *juvenile* and the Act provided that a juvenile was required to register only when he or she was committed to the California Youth Authority. Thus, the inapplicability of the Act to the offender in *Bernardino* arose from provisions in the Act having nothing to do with the identification of the *offenses* to which the Act applies, and the nonexistence of discretionary registration at that time is irrelevant.

Defendant's claim is that "sex-offender registration may be imposed solely as a condition of probation *outside the boundaries of Penal Code section 290 et seq.*" (Italics

---

[9] In *People v. Zaidi* (2007) 147 Cal.App.4th 1470, the Court of Appeal noted in dicta: "If the offense gives the court discretion to impose registration and the court elects to exercise its discretion to impose the registration obligation, the court then has no discretion to impose a requirement for less than lifetime." (*Id.* at p. 1487, fn. 6.) The Legislature recently enacted new statutes, not effective until 2021, which will permit less-than-lifetime registration, with the shortest registration period being 10 years. (Stats. 2017, ch. 541.) These new statutes reinforce our conclusion that the duration of the registration period is an important aspect of the Legislature's comprehensive, standardized, statewide scheme for sex offender registration.

added.)  We disagree.  Instead, we agree with the *Bernardino* court that the Legislature's creation of a comprehensive, standardized, statewide scheme for registration of sex offenders precludes trial courts from altering those standards to suit their individual preferences in particular cases.  The trial court here accurately recognized that it had no discretion to impose a probation condition requiring sex offender registration under parameters inconsistent with the Act.

## B.  No Abuse of Discretion

Defendant claims that the trial court "abused its discretion by failing to make an individualized decision in this case" that sex offender registration was merited.  He also claims that the court's order requiring registration was an abuse of discretion because there was no evidence that he was likely to reoffend.

The record refutes defendant's claim that the court failed to make "an individualized decision" on the registration issue.  The trial court's statement of its reasons for imposing sex offender registration was lengthy, fact-specific, and highly individualized.  The court identified numerous facts supporting its registration decision.  First, "[t]he statements of Mr. Eastman were troubling to the court to say the least, because they appeared to be extremely self-serving statements on the issue of whether not he would be required to register pursuant to 290 of the Penal Code."  Second, "[t]he fact that the defendant followed the victim on March 22, 2013 . . . blocking her in an aisle is of particular concern . . . as that contact affects the victim in that incident, that she would feel threatened is hardly surprising."  Third, defendant had "specifically targeted women wearing skirts and pursued them throughout a store."  Fourth, that defendant "minimized his behavior to report preparers . . . is of great concern to the court as to any further danger posed by Mr. Eastman."  Fifth, defendant's explanation for his conduct, "'to see if he could get away with it,'" was "disingenuous to the extreme."  Sixth, "a total of 13 separate women were targeted and imaged in this fashion."  Seventh, the incidents were

13

not spontaneous but instead "indicative of sophisticated prior planning." Eighth, "[t]hese were not isolated incidents, these spanned a known period of eleven months."

Based on all of these individualized facts, the court concluded that defendant's conduct was likely to reoccur because "there is no way to know when whatever part of your makeup gets you to do something like that is going to resurface." After the court made its registration decision, it noted that requiring registration was necessary to protect those associating with defendant. "[I]f I were going to be a landlord or I'm going to rent or I'm going to have a housemate, and that person were somebody that might violate my privacy in that way, had I known, had any of them known, they never would have put themselves in that position, and that is why I ordered 290 . . . ." "I would think that anyone that we are going to share a residence with . . . would want to know that this is a guy that might put a pinhole camera in a wall and watch you change your clothes or watch you use the bathroom or watch whatever." The trial court plainly based its registration decision on individual factors specific to this case.

Defendant's remaining claim is that the trial court's decision was an abuse of discretion because, in his view, "[a]ll of the evidence in this case demonstrated [defendant] is unlikely to reoffend," and "[b]oth his treating therapist and the forensic [psychiatrist] opined that [he] did not pose a current danger to society . . . ."

Defendant asserts that a discretionary registration decision cannot be upheld unless there is evidence that the defendant is likely to reoffend. To support this proposition, defendant relies on *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70 (*Lewis*), a decision of this court. In *Lewis*, the court was making a retrospective determination of whether a defendant, who had been offense-free for 20 years *after* his sex offense, could be subjected to discretionary registration. In that context, this court said: "Since the purpose of sex offender registration is to keep track of persons likely to reoffend, one of the 'reasons for requiring registration' under section 290.006 must be that the defendant

14

is likely to commit similar offenses—offenses like those listed in section 290—in the future." (*Lewis*, at p. 78.)

We need not consider whether the *Lewis* decision was correct in deeming requisite the likelihood of reoffense because there was ample evidence in this case that defendant was likely to reoffend. Defendant engaged in extremely persistent conduct over a nearly year-long period during which he victimized at least 13 women. His conduct was not passive. He pursued some of his victims in public places, cornered them, and brazenly video-recorded their private areas. Defendant also took advantage of other victims by planting a hidden camera in multiple bathrooms so that he could obtain video of friends, visitors, and housemates as they used the toilet. His statements about his misconduct were self-serving and unbelievable. Although he admitted his *actions* when confronted by the police, defendant offered absurd explanations and denied any sexual motivation. His failure to come to terms with the nature of his motivations despite a lengthy period of post-offense therapy raised substantial concerns about his ability to control his compulsions.

The trial court could reasonably conclude that a man who had engaged in a lengthy pattern of sophisticated, sexually motivated misconduct against 13 victims but continued to deny that his admitted misconduct was the product of sexual compulsions was likely to succumb to those compulsions again. Indeed, the court could view reoffense as even more likely because defendant had been able to engage in this conduct undetected for so long and freely admitted that part of his motivation was the thrill of avoiding detection. The trial court properly disregarded the opinions of defendant's treating therapist and the court-appointed psychiatrist because it found that these opinions were based on defendant's misrepresentations about his offenses. We find no abuse of discretion.

## III.  Disposition

The trial court's order is affirmed.

                                  _____

                                  Mihara, J.

WE CONCUR:

_____

Premo, Acting P. J.

_____

Elia, J.

17

Trial Court:                                      Superior Court of California,
                                                  County of Orange


Trial Judge:                                      Commissioner James Odriozola

Attorney for Defendant and Appellant:             Kendall Dawson Wasley

Attorneys for Plaintiff and Respondent:           Xavier Becerra
                                                  Attorney General of California

                                                  Gerald A. Engler
                                                  Chief Assistant Attorney General

                                                  Jeffrey M. Laurence
                                                  Senior Assistant Attorney General

                                                  Donna M. Provenzano
                                                  Supervising Deputy Attorney General

                                                  David H. Rose
                                                  Deputy Attorney General