Filed 12/21/21  P. v. Hoisington CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>ANTHONY LEE HOISINGTON,<br>        Defendant and Appellant. | A159567<br><br>(Lake County<br>Super. Ct. No. CR955300) |

A jury convicted appellant Anthony Lee Hoisington of felony false personation after he identified himself as his brother to a police officer during a traffic stop and signed a citation in his brother's name.  The trial court denied his motion to strike his prior serious felony conviction and sentenced him to an aggregate term of four years in state prison.  He contends on appeal that the trial court abused its discretion at sentencing and that his sentence constitutes cruel or unusual punishment under the California Constitution.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2019 at 10:50 p.m., Clearlake Police Department Officer Steven Diaz pulled over a black Jeep Cherokee because its rear license plate light was not functioning.  Appellant was driving the vehicle.  At the time, he had a felony arrest warrant for failure to report to post release community supervision (PRCS) in Mendocino County.

1

Appellant identified himself as Michael Hoisington[1] and said he did not have any identification with him. Officer Diaz checked Michael's name though dispatch for any outstanding warrants. The records check revealed that Michael did not have a driver's license. After Officer Diaz detained him, appellant admitted that there was "dope" in the vehicle under the driver's side floorboard. Officer Diaz searched the area and located a small plastic bag with a small amount of powder that he recognized as methamphetamine.

After receiving *Miranda*[2] admonitions, appellant admitted that the substance was methamphetamine and that it belonged to him. Officer Diaz thanked appellant for his honesty and told him that he would issue a citation and let him go. Using the name appellant had provided, Officer Diaz issued a citation with a notice to appear in court. Appellant signed the citation with Michael's name. The citation was for possession of methamphetamine and driving without a valid license.

Five minutes later, another officer, Sergeant Cook, arrived on the scene. Sergeant Cook was familiar with appellant's brother and informed Officer Diaz that appellant was not him. Officer Diaz confirmed on his computer that appellant was not Michael. After confronting appellant with this information, appellant admitted his real name and said he had given his brother's name because he had a PCRS hold out of Mendocino. Officer Diaz retrieved the citation that he had written in Michael's name and placed it into evidence for purposes of the instant prosecution.

---

[1] Because appellant and his brother share the same last name, we will use Michael's first name for clarity.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

In October 2019, an information was filed charging appellant with felony false personation (Pen. Code,[3] § 529, subd. (a)(3); count one); giving false information to a peace officer (§ 148.9, subd. (a); count two); possession of methamphetamine (Health & Saf. Code, § 11377; count three); being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a); count four); possession of paraphernalia (Health & Saf. Code, § 11364; count five); and driving without a license (Veh. Code § 12500, subd. (a); count six). As to count one, the only felony count, the information alleged one prior strike conviction (§ 667, subd. (b)–(i), 1170.12), and four prior prison terms (§ 667.5).[4]

At appellant's trial, the trial court granted the People's motion to dismiss counts two, four, and five in the interests of justice. Appellant entered a no contest plea to counts three and six. Following the testimony of Officer Diaz, the jury deliberated and found appellant guilty of count one. Appellant waived jury trial on the prior strike allegation and the court found the allegation to be true.

Appellant filed a motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) seeking to strike the prior serious felony conviction for purposes of sentencing. On January 27, 2020, the trial court denied the *Romero* motion, and denied appellant's alternative motion under section 17, subdivision (b) to reduce the felony charge to a misdemeanor.[5]

---

[3] All undesignated statutory references are to the Penal Code.

[4] On December 4, 2019, the district attorney dismissed the prior prison term allegations.

[5] Appellant was charged and convicted of felony false impersonation under section 529, subdivision (a)(3). "Under section 529, it is either a misdemeanor or a felony to falsely impersonate another person and, while

The court sentenced him to the midterm of two years on count one, doubled to four years because of the prior strike. He was sentenced to one year on count three and 180 days on count six, both terms to be served concurrently to the term imposed on count one. The court also imposed various fines and fees. Appellant was awarded 293 days of custody credits. This appeal followed.

## II. DISCUSSION

### A. *Appellant's Contentions*

Appellant asserts that the trial court abused its discretion when it denied his *Romero* motion and imposed a four-year prison sentence for what he characterizes as a "de minimis" violation of section 529. According to appellant, the court failed to consider numerous mitigating circumstances and the full range of lesser alternatives in imposing his sentence. He also argues that his sentence constitutes cruel or unusual punishment under article I, section 17 of the California Constitution.[6]

### B. *Denial of Motion to Strike Prior*

We review the trial court's denial of a *Romero* motion under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed

doing so, commit an additional act." (*People v. Casarez* (2012) 203 Cal.App.4th 1173, 1179, fn. omitted.)

[6] Appellant raised two other arguments in his opening brief, but abandoned them after considering the Attorney General's responding brief.

4

merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376–377.)

Appellant complains that the trial court "focused almost entirely on [his] criminal history when it denied his *Romero* motion." He asserts that the court failed to consider in mitigation that the strike offense was committed when he was only 20 or 21 years old and was a relatively minor nonviolent offense, involving breaking into an unoccupied vacation trailer and stealing several items. He also contends that the court also failed to consider that he was almost 40 years old at sentencing and was "gaining in maturity," that he had been employed for almost two years prior to his arrest, and that his employer was willing to rehire him. Finally, he argues that the court failed to account for his substance abuse problems and his desire to enter treatment.

It is true that appellant's 20-year history of convictions and parole violations played a prominent role in the trial court's denial of his motion. The court observed that although the prior strike offense was old, "there doesn't appear to be any significant break in custody." The court added: "Had there been, I would likely grant the *Romero* [motion]. But it looks like [appellant] gets out and just commits crimes when he's out. He hasn't stayed out of custody long enough crime free."

We find no abuse of discretion in the trial court's reasoning. Since his conviction for burglary in 2001, appellant has sustained 10 violations of parole in connection with the strike term. He was convicted of four other

felony offenses: theft from an elder adult in 2007 (§ 368, subd. (d)), possession of a controlled substance (§ 11350, subd. (a)) in 2011, receiving stolen property in 2012 (§ 496, subd. (a)), and statutory rape in 2014 (§ 261.5). His record includes eight misdemeanor convictions, including two recent convictions for giving false information to a peace officer (§ 148.9, subd. (a)). The staleness of a prior conviction is most relevant when a defendant has subsequently led a " 'legally blameless life.' " (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; cf. *People v. Harris* (1998) 60 Cal.App.4th 727, 739.) Such is not the case here, and the trial court was entitled to take appellant's unbroken pattern of unlawful conduct into account when exercising its discretion.

Contrary to appellant's contentions on appeal, the trial court did consider other factors in mitigation. These factors were detailed in the probation report the court had reviewed prior to pronouncing sentence. The court weighed, and discounted, appellant's contention that his false impersonation was not a serious offense because he had admitted his true identity to police officers within minutes of using his brother's name. The trial court observed: "[H]e did admit who he was, but he only did it after Sergeant Cook arrived and Sergeant Cook knew who he was. Had Sergeant Cook not arrived, his brother would probably show up at arraignments on a warrant. So this is a serious crime."

The court also noted that appellant "has two prior convictions for 148.9 [giving false identification to peace officer] . . . I think this is a third conviction in a row that's relating to falsely identifying himself to law enforcement." These repeated convictions indicated that the underlying crime was no aberration and that the prior convictions had not deterred his

6

behavior.  In sum, we conclude the trial court did not abuse its discretion in denying appellant's *Romero* motion.

## C. *Imposition of Sentence*

Appellant contends that the trial court abused its discretion when it imposed the four-year sentence by failing to consider the de minimis nature of the offense and the full range of sentencing options available to it.  We are not persuaded.

Pursuant to section 1170, subdivision (b), "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  We review a trial court's election of the lower, middle, or upper term for an abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  "[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*)  The trial court may base its decision on any aggravating circumstance it deems significant that is " 'reasonably related to the decision being made.' " (*Id.* at p. 848; see also Cal. Rules of Court, rule 4.408(a).)  Moreover, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978.)

In sentencing appellant to the middle term of two years (doubled to four years by the prior strike), the trial court found the following circumstances in aggravation: appellant's prior convictions were numerous

7

and of increasing seriousness; he had served four prior prison terms; he was on summary probation when the crime was committed; and his prior performance on probation, parole, and PRCS was unsatisfactory. The court found no circumstances in mitigation. While the circumstances in aggravation outweighed those in mitigation, the court noted that the aggravating circumstances all related to his prior record. For that reason, the court exercised its discretion and imposed the midterm.

Appellant argues that his offense was minor compared to that of other defendants. He cites *People v. Robertson* (1990) 223 Cal.App.3d 1277, a case in which the defendant falsely identified himself as his brother when he was arrested for stealing a truck. (*Id.* at p. 1279.) The brother was arrested in Texas and extradited to California, where he was found incompetent to stand trial and was held at a state hospital for over 16 months before hospital staff realized that the brother had been wrongly arrested. (*Id.* at pp. 1282–1283.) Appellant also references *People v. Chardon* (1999) 77 Cal.App.4th 205, in which the defendant falsely gave her sister's name at a traffic stop and signed a citation in her sister's name. (*Id.* at pp. 208–209.) Even though a warrant was later issued for the sister's arrest for failure to appear, the defendant was only sentenced to probation for this offense. (*Id.* at p. 210.)

Appellant argues that his conduct was less extreme than the defendants in those cases, and "the trial court's failure even to consider the de minimis nature of appellant's offense when sentencing him was an abuse of discretion." We disagree. There is no indication that appellant would have admitted his true identity had Sergeant Cook not arrived and caused Officer Diaz to question appellant's identity. That the offense did not result in any negative consequences for his brother had less to do with appellant seeing the error of his ways than with the police officers' fortuitous intervention.

8

Furthermore, the court *did* consider this factor in arriving at his sentence. In a pretrial exchange with defense counsel, the trial court acknowledged appellant's early admission to the police officers that he had falsified his identification: "I mean, I think it's definitely a mitigating factor to consider for sentencing." It was well within the trial court's discretion to impose the aggravated term and sentence appellant to a total of six years. (See *People v. Osband* (1996) 13 Cal.4th 622, 728–729 [imposition of upper term requires only a single aggravating factor].) Indeed, both probation and the prosecution recommended a six-year sentence. The court instead selected the midterm, explaining: "Also, even though it's not an excuse and it doesn't justify what [appellant] did, he did eventually admit to the officers who he was and his brother didn't suffer any harm as a result of his conduct. So for that reason I'm going to impose the midterm."

Finally, appellant contends that the trial court failed to consider his drug addiction as a factor in mitigation. Nothing in the record supports his claim that the court did not consider this factor. As stated above, appellant's drug addiction was well documented in the probation report. In addition, the trial court accepted the prosecution's dismissal of several drug charges related to this incident in the interests of justice. Far from being ignorant of this factor, the court reasonably could have concluded that this factor did not outweigh appellant's long criminal history or the potential harm his brother could have faced by the initiation of criminal proceedings against him.

Finally, appellant contends that the trial court abused its discretion when it failed to consider the full range of sentencing options available to it, including selecting the lower term for the felony conviction. Appellant cites no authority for the proposition that a trial court must consider and discuss the full range of potential sentencing dispositions. As we have discussed, the

9

trial court concluded that the mitigating factors, if any, were outweighed by the aggravating factors. It nevertheless sentenced appellant to the midterm rather than the upper term. Appellant has failed to demonstrate that the trial court's sentencing determination is so irrational that no reasonable jurist could agree with it.

## D. *Cruel or Unusual Punishment Under the State Constitution*

Appellant asserts that his sentence constitutes cruel or unusual punishment in violation of article I, section 17, of the California Constitution because the four-year term is grossly disproportionate for his "brief lapse of judgment" in impersonating his brother. He again emphasizes that he admitted the offense within minutes and that his conduct did not cause his brother any harm.

As an initial matter, appellant forfeited this claim by failing to raise it in the trial court. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247 [a defendant's "failure to contemporaneously object that his sentence constitutes cruel and unusual punishment forfeits the claim on appellate review"]; see also *People v. Baker* (2018) 20 Cal.App.5th 711, 720 (*Baker*).)

Even if his claim had not been forfeited, we would find it without merit. A punishment is cruel or unusual in violation of the California Constitution "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1145 (*Avila*); *Baker, supra*, 20 Cal.App.5th at p. 723.) "In our tripartite system of government, the legislative branch defines crimes and prescribes punishment. [Citation.] It is therefore the rare case where a court could declare the length of a sentence mandated by the Legislature unconstitutionally excessive." (*Avila*, at

p. 1145; *Baker*, at p. 724 [" 'Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive' "].)

The Supreme Court in *In re Lynch* described three "techniques" used in determining whether a sentence is cruel or unusual under the California Constitution: (1) examination of the nature of the offense and/or the offender; (2) comparison of the punishment with that prescribed for more serious crimes in California; and (3) comparison of the punishment with that given for the same offense in other jurisdictions. (*In re Lynch, supra*, 8 Cal.3d at pp. 425–427; *Avila, supra*, 57 Cal.App.5th at p. 1145; *Baker, supra*, 20 Cal.App.5th at p. 723.)

Appellant does not address the second and third prongs of the *In re Lynch* inquiry. Accordingly, we focus our attention on the first: the nature of the offense and the offender. (See *People v. Em* (2009) 171 Cal.App.4th 964, 972.) "In assessing the nature of the offense, a court should consider the circumstances of the particular offense such as the defendant's motive, the way the crime was committed, the extent of his involvement and the consequences of his acts. [Citation.] In analyzing the nature of the offender, a court should consider his 'age, prior criminality, personal characteristics, and state of mind.' " (*People v. Felix* (2002) 108 Cal.App.4th 994, 1000; *Avila, supra*, 57 Cal.App.5th at p. 1146.) Whether a punishment is cruel or unusual is a question of law that we independently review; however, we consider any disputed facts in the light most favorable to the judgment. (*People v. Edwards* (2019) 34 Cal.App.5th 183, 190; *People v. Mantanez* (2002) 98 Cal.App.4th 354, 358.)

Appellant seeks to minimize the severity of the offense by pointing to the fact that his brother was not harmed by his malfeasance. Again,

11

appellant did not voluntarily admit to Officer Diaz that he had impersonated his brother. That his brother suffered no adverse consequences cannot be attributed to appellant, but rather to the actions of the arresting officers in discovering his impersonation. Nor was this offense an isolated incident, as he had falsely identified himself to law enforcement on at least two recent prior occasions, both resulting in convictions. Moreover, appellant is not a youthful offender, but rather a mature adult with a 20-year uninterrupted history of criminal convictions and supervisory violations. Finally, the trial court could have lawfully imposed the maximum term of six years, but instead imposed the midterm based on the more benign circumstances of this offense. In light of these factors, we cannot conclude that the four-year sentence is so disproportionate that it offends fundamental norms of human dignity.

## III. DISPOSITION

The judgment is affirmed.

                            _____

                            Sanchez, J.

WE CONCUR:


_____

Margulies, Acting P. J.


_____

Banke, J.


A159567